UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANNABELLE ZARATZIAN ) | |
| PLAINTIFF ) | |
| ) | |
| V. ) | COMPLAINT AND JURY DEMAND |
| ) | |
| ADEL RAMSEY ABADIR AND ) | |
| LARRY M. CARLIN ) | |
| DEFENDANTS ) | DECEMBER 2, 2010 |

JUDGE MOTZ

## COMPLAINT

Plaintiff, ANNABELLE ZARATZIAN, for her Complaint for damages and injunctive relief against Defendants, ADEL RAMSEY ABADIR and LARRY M. CARLIN states the following:

### PARTIES

1. Plaintiff, Annabelle Zaratzian, is a resident of West Harrison, New York.

2. Defendant, Adel Ramsey Abadir ("Defendant"") is a resident of White Plains, New York.

3. Defendant, Larry M. Carlin ("Carlin"), is a licensed New York attorney, whose principal place of business is New York, New York and upon information and belief is a resident of New York, New York.

4. Plaintiff and Defendant were formerly married having divorced on December 19, 2006. Defendant retained Carlin to represent him in conjunction with the divorce. Carlin has also represented Defendant in post-judgment proceedings between Plaintiff and Defendant currently pending before the Family Court within and for the County of Westchester.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _____

5. Defendant initially filed an action for dissolution of marriage in February 2000. This action was withdrawn in May 2000. The parties then proceeded to reside together until they again separated on or about September 18, 2005. The five year period between the withdrawal of the first action and the parties' later separation was contentious and marked with physical violence and repeated police involvement. The ensuing second matrimonial action, initiated by Plaintiff, remained contentious until a settlement was reached on or about December 19, 2006.

## JURISDICTION AND VENUE

6. This Court has jurisdiction under 28 U.S.C. § 1331 based upon the Defendants' violations of Title 3 of the Omnibus Crime Control and Safe Streets Act of 1968, specifically: 18 U.S.C. § 2510 *et seq.*, the Wire and Electronics Communications Interception Act; and, 18 U.S.C. § 2701 *et seq.* the Stored Wire and Electronic Communications Privacy Act" and 42 U.S.C. § 1985(2), the Civil Rights Act of 1871.

7. This Court has pendent jurisdiction of the related state law claims asserted in this complaint pursuant to 28 U.S.C. § 1367 because they arise from a nucleus of operative facts common to the causes of action arising under Counts One and Two, and because the exercise of pendent jurisdiction serves the interests of judicial economy, convenience and fairness to the parties.

8. Venue in this district is proper pursuant to 28 U.S.C. § 1391(b)(2) since some, or all, of the conduct which is the subject of this complaint occurred in Westchester County, New York.

## COMMON ALLEGATIONS

9. Following the parties' reconciliation, on August 30, 2001 Defendant entered into a contract with Cablevision for the purpose of obtaining Internet and electronic mail ("e-mail")

services on behalf of himself and Plaintiff. This Cablevision service is known commercially as "Optimum On-Line". At Defendant's request, Cablevision assigned an e-mail address of AZARATZIAN@OPTONLINE.NET to Plaintiff and RABADIR@OPTONLINE.NET to Defendant. Thereafter, Defendant had the ability to transmit and receive e-mail using his e-mail address, and in fact utilized said account through June 4, 2009. Upon information and belief, Defendant had exclusive access to e-mail account RABADIR@OPTONLINE.NET at all relevant times herein. Similarly, Plaintiff utilized her e-mail address to transmit and received personal and professional e-mail over the Internet through the present date. At all relevant times herein, Plaintiff considered her e-mail account to be private and its contents confidential.

10. Defendant initially configured Plaintiff's e-mail account and had access to the password utilized by Plaintiff. By virtue of his access to Plaintiff's account password, Defendant had access to all settings and features contained within Plaintiff's e-mail account.

11. At all relevant times herein, Cablevision's Optimum On-Line e-mail service contained a feature permitting an e-mail user to automatically forward ("auto-forward") incoming e-mail to another specifically designated e-mail address. Anyone having password access to an e-mail account can enable this feature electronically by checking an activation box located on the appropriate screen and then entering the address or addresses to which all incoming e-mail is to be forwarded. Unless an e-mail user is independently aware that the "auto-forward" feature has been enabled, the Optimum On-line e-mail program does not warn an e-mail account holder that the feature has been enabled or that all incoming e-mail is being automatically forwarded on to another e-mail account.

12. Following her separation from Defendant in September 2005, Plaintiff changed the e-mail password to her account and thereafter believed that her e-mail communications were

secure, inaccessible to Defendant, and would thereafter remain private and confidential. At this point in time Plaintiff also assumed full responsibility for the Cablevision contract and thereafter paid all user fees in connection with the master account. This contract has remained in full force and effect through the present date.

13. On June 4, 2009, Plaintiff contacted Cablevision to discuss her cable, telephone and Optimum On-Line accounts. During the course of this contact, Plaintiff discovered that in addition to her own e-mail account (i.e. AZARATZIAN@OPTONLINE.NET) another active e-mail account was being maintained by Cablevision through her master account and at her expense. This email account was the one which Defendant had set up for himself in 2001, i.e. RABADIR@OPTONLINE.NET. In response to discovering this information, Plaintiff instructed the Cablevision representative to close the RABADIR@OPTONLINE.NET e-mail account.

14. Following Cablevision's closure of the RABADIR@OPTONLINE.NET e-mail account on June 4, 2009, Plaintiff began receiving recurrent e-mail messages containing the subject line: "Delivery Notification: Delivery has failed."

15. Upon confirming that her own direct outgoing e-mail messages were indeed being transmitted to the intended recipients, Plaintiff disregarded the error messages until she finally examined a series of such messages in late June 2010. A copy of one such message dated June 25, 2010 is attached hereto as "Exhibit A" and is representative of all such messages received after June 4, 2009.

16. Upon careful examination of the error messages, Plaintiff discovered that the original incoming e-mail messages directed to her at AZARATZIAN@OPTONLINE.NET had apparently been in turn forwarded to e-mail account "RABADIR@OPTONLINE.NET. Further, each error message stated that the delivery transmission attempt to RABADIR@OPTONLINE.NET had

failed. As it appeared from the description contained on the error message that an attempt was being made to forward all of her incoming e-mail messages to RABADIR@OPTONLINE.NET, Plaintiff contacted Cablevision technical support on June 27, 2010 seeking an explanation for the error messages.

17. With the assistance of a Cablevision representative, Plaintiff discovered that a setting on her e-mail account had been enabled thereby activating Optimum On-line's e-mail "auto-forwarding" feature. She also discovered that the recipient e-mail address for all forwarded e-mail was designated as RABADIR@OPTONLINE.NET.

18. At some time prior to mid-September, 2005, the last date that Defendant had access to Plaintiff's e-mail account and original password, Defendant intentionally, and without prior notice to Plaintiff, enabled the "auto-forwarding" feature on Plaintiff's Optimum On-line e-mail account, and designated e-mail address "RABADIR@OPTONLINE.NET" as the recipient address for all forwarded e-mails.

19. By enabling this feature on Plaintiff's e-mail account, Defendant provided Optimum On-Line with a standing instruction to automatically send a copy of each and every e-mail directed to or received by Plaintiff to RABADIR@OPTONLINE.NET. As a result of Defendant's actions, each and every e-mail Plaintiff received from the date the "auto-forward" feature was activated through June 4, 2009 was automatically forwarded on to Defendant's e-mail account at RABADIR@OPTONLINE.NET.

20. The e-mail communications forwarded on to the RABADIR@OPTONLINE.NET e-mail account included Plaintiff's private, confidential and privileged electronic communications with various third parties, including her attorneys and accountant. Given that Defendant was receiving copies of all incoming e-mail, including all incoming attorney-client e-mail

communications and all attached message threads during the period September 2005 through December 19, 2006, Defendant had access to Plaintiff's communications which discussed matrimonial litigation strategy, settlement parameters, issues and concerns.

21. Defendant disclosed to Carlin the contents of the forwarded e-mails and/or the actual e-mails he obtained. Carlin, knowing or having reason to know, that Plaintiff's e-mail communications were obtained by Defendant through the interception of electronic communications and/or the accessing of stored communications, then disclosed and/or utilized the contents of Plaintiff's private and confidential electronic communications in pre-judgment and post-judgment judicial proceedings for the purpose of benefiting Defendant.

22. One example of Carlin utilizing in court proceedings surreptitiously obtained materials and/or information disclosed to him by Defendant, occurred on October 12, 2010. On October 12, 2010, Carlin, for the purpose of obtaining a court order requiring Plaintiff to pay 50% of certain expenses, stated to Westchester Family Court Judge Sandra Edlitz in open court that Plaintiff had income of $400,000. The only information that Carlin or Defendant had previously received from Plaintiff with respect to her income was a December 2006 declaration that she expected to earn $300,000 when she started work in a new position at a medical facility. Plaintiff never disclosed her actual 2007, 2008, 2009 or 2010 earnings to Defendants.

23. However, by virtue of having Plaintiff's e-mail "auto-forwarded" to his own e-mail address, Defendant, obtained Plaintiff's 2008 income tax return which her accountant had electronically transmitted as an e-mail attachment to her on June 3, 2009. Shortly after Defendant obtained Plaintiff's 2008 income tax return, he made a comment to Plaintiff that he earned the same amount she did, $360,000. At the time, Plaintiff was stunned that Defendant accurately

knew how much she had earned in 2008 and could not understand how he came to know this information.

24. The tax return transmitted on June 3, 2009 reported total income, including alimony, of $363,000. Not included in this amount was an additional $18,000 of child support, the sum of the two amounts being $381,000.

25. Carlin's assertion of fact to the Family Court – that Plaintiff had $400,000 of income – was within five percent of the total monies Plaintiff received in 2008. It was, however, a false statement given that Plaintiff was actually earning substantially less than $363,000 in 2010. Carlin successfully persuaded Judge Edlitz to require Plaintiff to pay continue paying 50% of the costs at issue.

26. Defendant intercepted the e-mail communications described in Paragraph 19 and 20, above, without the knowledge or consent of Plaintiff, and in violation of federal or state law.

**COUNT ONE (Violation of 18 U.S.C. § 2511 – "The Wiretap Act")**

27. Paragraphs 1 through 26 of this complaint are realleged and incorporated herein as if more fully set out.

28. At all relevant times herein, The Electronic Communications Privacy Act, 18 U.S.C. § 2510 *et seq.* was in full force and effect and governed the acquisition and disclosure of electronic communications transmitted by electronic communications services.

29. At all relevant times herein, subject to specific exceptions, 18 U.S.C. § 2511 prohibited the intentional interception, disclosure, or use of the contents of any electronic communications between two parties without the consent of one or both of the parties to that communication.

30. Defendant intentionally intercepted Plaintiff's electronic communications, i.e. e-mail, without her consent thereby violating 18 U.S.C. § 2511(1)(a).

31. Defendant intentionally disclosed or endeavored to disclose Plaintiff's electronic communications, i.e. e-mail, to Carlin, and upon information and belief to others, without Plaintiff's consent, while knowing or having reason to know that the information was obtained through the interception of wire, oral or electronic communication in violation of 18 U.S.C. § 2511(1)(c).

32. Defendant and Carlin intentionally used, or endeavored to use, the contents of Plaintiff's electronic communications, i.e. e-mail, while knowing or having reason to know that the information was obtained through the interception of wire, oral or electronic communications in violation of 18 U.S.C. § 2511(1)(d).

33. Pursuant to 18 U.S.C. § 2520, Plaintiff is entitled to relief for the Defendant's violations of 18 U.S.C. § 2511(1)(a), (c), and (d) and Carlin's violations of 18 U.S.C. § 2511(1)(d).

**COUNT TWO (Violation of 18 U.S.C. § 2701 - Stored Communications Act)**

34. Paragraphs 1 through 26 of this complaint are realleged and incorporated herein as if more fully set out.

35. At all relevant times herein, The Stored Communications Act, 18 U.S.C. § 2701 *et seq.* was in full force and effect and governed the accessing of facilities through which electronic communication service is provided.

36. At all relevant times herein, subject to specific exceptions, 18 U.S.C. § 2701(a) prohibited the intentional unauthorized accessing of a facility through which an electronic

communication service is provided whereby an individual obtains access to an electronic communication which it is in electronic storage in such system.

37. Between 2001 and June 4, 2009, Defendant violated 18 U.S.C. § 2701(a) by intentionally and without Plaintiff's authorization repeatedly accessing electronic communications, i.e. e-mail, while said electronic communications were in electronic storage in systems maintained by Cablevision.

38. To the extent that Defendant was ever authorized to access Plaintiff's electronic communications while they were being electronically stored by Cablevision, said authorization terminated upon the parties' separation in September 2005 and/or upon her changing her e-mail account password. By intentionally accessing Plaintiff's e-mail after said authorization was either expressly or impliedly revoked, Defendant violated 18 U.S.C. § 2701(a).

39. Pursuant to 18 U.S.C. § 2707, Plaintiff is entitled to relief for the Defendant's violations of 18 U.S.C. § 2701(a).

## COUNT THREE
(Violation of 42 U.S.C. § 1985(3) - conspiracy to violate 18 U.S.C. §§ 2511 and 2701 and New York Penal Law 250.05.)

40. Paragraphs 1 through 39 of this complaint are realleged and incorporated herein as if more fully set out.

41. After Plaintiff and Defendant separated in September 2005, Defendant retained Carlin to represent him in the ensuing litigation. Upon information and belief, Defendant either informed Carlin that he had ongoing access to Plaintiff's stored e-mail communications or provided Carlin with sufficient information so that Carlin could conclude with reasonable certainty that Defendant had ongoing surreptitious access to Plaintiff's stored and transitting e-mail communications.

42. Knowing or having reason to know that Defendant's continued accessing of Plaintiff's stored and transitting e-mail communications were violations of federal and state laws, i.e. 18 U.S.C. § 2511 *et seq.*, 18 U.S.C. § 2701 *et seq.* and New York Penal Law § 250.05, Carlin, upon information and belief, agreed to continue receiving from Defendant copies of Plaintiff's illegally accessed e-mails, summaries of such e-mails or information derived from such e-mails.

43. As a result of the agreement between Defendant and Carlin to continue illegally accessing Plaintiff's stored and transitting e-mail communications, Defendant and Carlin had access to, and upon information and belief obtained, *inter alia,* Plaintiff's attorney-client communications, Plaintiff's accountant-client communications, Plaintiff's confidential and protected personal health information, and the confidential health information of Plaintiff's medical patients.

44. As set forth in Paragraphs 22 to 25 herein, Carlin acted in furtherance of the agreement to illegally obtain Plaintiff's stored electronic communications.

45. Carlin knew or had reason to know that Defendant was intentionally and without authorization accessing and obtaining Plaintiff's stored and transitting electronic communications. As Defendant's attorney, he agreed to receive summaries or copies of said electronic communications in order to assist in the prosecution and/or defense of Defendant's legal claims. In so doing, Carlin conspired with Defendant to deprive Plaintiff of the equal protection of the laws of the United States and the State of New York, specifically, 18 U.S.C. § 2511, 18 U.S.C. § 2701 and New York Penal Law 250.05, in violation of 42 U.S.C. § 1985(2). Said conspiracy and concealment of such actions has been ongoing since 2005.

46. By conspiring to violate 42 U.S.C. § 1985(2) Plaintiff has been damaged.

## COUNT FOUR (Per Se Tort - Violation of NY Penal Law Sec. 250)

47.  Paragraphs 1 through 46 of this complaint are realleged and incorporated herein as if more fully set out.

48.  Defendants had a statutory duty, pursuant to New York Penal Law § 250.05, to not commit electronic eavesdropping with respect to Plaintiff's electronic communications.

49.  Plaintiff, is a user of electronic communications, and as such is a member of the class for whom the protections of this statute were enacted.

50.  The legislative purpose behind this statute, the deterrence of illegal electronic eavesdropping, is enhanced and furthered through the private enforcement of tort remedies.

51.  By reason of the conspiracy between the Defendant and Carlin, their commission of felonies by repeated violations of New York Penal Law § 250.05, and the aiding and abetting thereof, Defendants conducted themselves in a manner that was malicious, oppressive, outrageous, willful, wanton, reckless, and abusive so as to entitle Plaintiff to compensatory and punitive damages.

## COUNT FIVE (Trespass to Chattels)

52.  Paragraphs 1 through 51 of this complaint are realleged and incorporated herein as if more fully set out.

53.  At all relevant time herein, Plaintiff held a possessory interest in her e-mail communications the intrinsic value of which was based in part upon the confidential and private nature of the communications.

54.  Through their actions, Defendant and Carlin intentionally intermeddled with Plaintiff's possessory interest in her e-mail communications.

55. By intermeddling with Plaintiff's e-mail communications, Defendant and Carlin dispossessed Plaintiff of the confidential and private aspects of said communications and used the information contained therein for their personal and professional gain thereby impairing the condition, quality and value of Plaintiff's property.

56. By reason of the said trespass, Defendants conducted themselves in a manner that was malicious, oppressive, outrageous, willful, wanton, reckless, and abusive so as to entitle Plaintiff to compensatory and punitive damages.

## COUNT SIX
### (Temporary and Permanent Injunctive Relief Pursuant to 18 U.S.C. § 2520(b) and 18 U.S.C. § 2707(b))

57. Paragraphs 1 through 39 of this complaint are realleged and incorporated herein as if more fully set out.

58. As direct and proximate result of Defendant's and Carlin's conduct as described herein, Plaintiff has suffered irreparable harm through the loss of her confidential and private electronic communications. Given that Plaintiff and Defendant are currently engaged in New York Family Court litigation, proceedings in which Carlin represents Defendant, the Defendants' misappropriation, possession and continued use and disclosure of the confidential information gained in violation of state and federal law poses a substantial risk of irreparable harm. The total loss to Plaintiff in economic terms cannot be accurately measured at this time.

59. Plaintiff has a substantial likelihood of success on the merits of her claims. In addition, the magnitude of the injury being suffered due to Defendants' unlawful conduct heavily outweighs whatever hardship Defendants' could allege or prove from being restrained as requested.

60. The granting of the injunctive relief requested herein will not adversely affect any public policy or public interest.

61. Injunctive relief, as an equitable remedy, is authorized by 18 U.S.C. § 2520(b) and 18 U.S.C. § 2707(b)), and as such Plaintiff need not demonstrate an irreparable injury or inadequacy of other remedies, but merely show a *prima facie* case of illegality and that an injunction would fulfill the legislative purpose of the statute. A temporary restraining order and preliminary injunction will fulfill the purposes of these statutes.

62. At this point, Plaintiff has no adequate remedy at law and is suffering immediate, imminent, and irreparable harm. Should Defendants' actions in using and disclosing the communications and information illegally obtained continue unabated, they will continue to harm Plaintiff's ability to proceed in Family Court as well impact her privacy interests.

63. Further, a substantial risk exists that in the absence of an appropriate order directing Defendants to preserve material evidence, Defendants will destroy or conceal evidence supporting the claims articulated in this Complaint. Specific items at risk of spoliation include, but are not limited to: digital storage devices; computer hard drives; files stored on-line; stored e-mail communications; downloaded e-mail communications and any attachments thereto; correspondence or memoranda summarizing the contents of Plaintiff's electronic communication or e-mail. Given that much of the evidence at issue is likely to be in digital format, the risk of loss through inadvertence, accident, or deliberate action is heightened. In the event that such evidence is lost, mishandled or destroyed, Plaintiff's ability to establish her claims and damages will be threatened with irreparable harm.

64. There is reason to believe that in the absence of an immediate order restraining the destruction or manipulation of material evidence, such items will be destroyed or concealed.

In September 2005, during a one day lapse in a 7 day order of protection issued on behalf of Plaintiff, Defendant, unbeknownst to Plaintiff, entered the marital residence when Plaintiff was absent from the house. Upon Plaintiff's return she discovered Defendant in the house and he demanded to know where the family computer was and stated that it was his intention to take the computer with him. Earlier, Plaintiff had removed the computer from the house in order to have it forensically evaluated. The computer contained password protected folders to which Plaintiff had never been given access. Upon forensic evaluation large amounts of prurient material were discovered and it was determined that large amounts of data had recently been lost during the crash of the hard drive. Additionally, Plaintiff discovered that Defendant removed a large amount of documentation during his visit which Plaintiff believed to include financial records. Plaintiff was never able to determine the full extent of the items removed by Defendant.

65. Issuance of a temporary restraining order requiring Defendants to preserve all material evidence in their possession, custody or control would aid in fulfilling the remedial purposes articulated in 18 U.S.C. § 2520(c) and 18 U.S.C. § 2707(c).

66. Plaintiff has not provided notice to Defendants of this action or the relief sought herein on the grounds that to do so would accelerate the risk of destruction of evidence which Plaintiff is seeking to prevent. As to the requirement of a bond, the Court should set a minimum bond amount of no more than $100.00 on the grounds that the relief being sought will not cause damage to Defendants in that Defendants have no legal right to possess, disclose or use Plaintiff's electronic communications or any derivative materials.

67. Accordingly, Plaintiff requests a temporary restraining order and temporary and permanent injunctions against defendants Adel Ramsey Abadir and Larry M. Carlin, their agents, servants, employees and those persons in active concert or participation with them, from:

(a) Deleting, altering, destroying or removing any e-mails or electronic communications directly or indirectly originating from Plaintiff's e-mail account, i.e. AZARATZIAN@OPTONLINE.NET;

(b) Deleting, altering, destroying or removing any e-mails or electronic communications directly or indirectly originating from Defendant's e-mail account, i.e, RABADIR@OPTONLINE.NET;

(c) Deleting, altering, destroying or removing any hard copy of any e-mails or electronic communications or attachments thereto which directly or indirectly originated from Plaintiff's e-mail account, i.e. AZARATZIAN@OPTONLINE.NET ;

(d) Deleting, altering, destroying or removing any summary of any e-mails or electronic communications or attachments thereto which directly or indirectly originated from Plaintiff's e-mail account, i.e. AZARATZIAN@OPTONLINE.NET ;

(e) Directly or indirectly using or disclosing any information contained within any of Plaintiff's electronic communications or documents attached to any such electronic communications that Defendants may have received;

68. Plaintiff further requests that the Court enter Temporary Restraining Orders requiring:

(a) defendants Adel Ramsey Abadir and Larry M. Carlin to preserve any and all evidence of any disclosure or dissemination of Plaintiff's electronic communications or any information contained therein;

(b) defendants Adel Ramsey Abadir and Larry M. Carlin to preserve any and all portable or fixed electronic storage devices, including but not limited to, hard drives, floppy disks, on-line storage, thumb or zip drives, compact disks or flash drives, containing e-mails or electronic communications directly or indirectly originating from Plaintiff's e-mail account, i.e. AZARATZIAN@OPTONLINE.NET or any e-mail account utilized by either Defendant, or any summaries of information derived from Plaintiff's e-mail or electronic communications which may contain evidence of any disclosure or dissemination of Plaintiff's electronic communications or any information contained therein;

(c) that pending further order of this Court, all items and materials covered by this order shall be preserved in such a manner as to maintain the integrity of the data, including all associated meta-data existing as of the date of this order;

(d) that the Court, pursuant Fed. R. Civ. P. 53, appoint a Special Master with training or knowledge in computer forensics to examine all electronic storage devices and media in the possession, custody or control of Defendants, to the extent that such items were used to store data related to any interception of Plaintiff's electronic communications or e-mail at any time prior to the date of service of this Order, for the purpose of identifying any electronic communications or data material to this action, and to perform any other function or duty ordered by the Court. Plaintiff

will incur the expenses to have each such item imaged for the purposes of preserving, cataloging and subject to further order, locating evidence.

69. The Temporary Restraining Order, as requested above, is warranted in that it would be of assistance in preserving the status quo.

WHEREFORE, Plaintiff requests a trial by jury and that judgment enter against Defendants as follows:

1. Compensatory damages;

2. Statutory damages pursuant to 18 U.S.C. § 2520(c) and 18 U.S.C. § 2707(c);

3. Punitive damages pursuant to 18 U.S.C. § 2520(b) and 18 U.S.C. § 2707(c) and the common law;

4. Attorney's fees and costs pursuant to 18 U.S.C. § 2520(b), 18 U.S.C. § 2707(b) and 42 U.S.C.§ 1988;

5. A temporary and permanent order, pursuant to 18 U.S.C. § 2520(b) and 18 U.S.C. § 2707(b), directing Defendants to return to Plaintiff all copies of all electronic communications, whether stored in an electronic format or printed;

6. A temporary and permanent order, pursuant to 18 U.S.C. § 2520(b) and 18 U.S.C. § 2707(b), barring Defendants from disclosing the contents of any electronic communications obtained in violation of federal law.

7. A temporary and permanent order, pursuant to 18 U.S.C. § 2520(b) and 18 U.S.C. § 2707(b), directing Defendants to cease and desist from engaging in any electronic monitoring, surveillance or wiretapping of Plaintiff;

8. A temporary restraining order issue pursuant to 18 U.S.C. § 2520(b) and 18 U.S.C. § 2707(b), ordering the Defendants to preserve all documentary and physical evidence in their care, custody or control, including all electronic devices that may contain any evidence of Plaintiff's electronic communications;

9. Such further and additional relief as this Court may find to be fair and equitable.

ANNABELLE ZARATZIAN

By _____
Harold R. Burke (HB0149)
Law Offices of Harold R. Burke
P.O. Box 4078
21 Sherwood Place
Greenwich, CT 06830
Telephone: (203) 219-2301
Facsimile: (203) 413-4443
E-Mail: hrb@burke-legal.com

From: Internet Mail Delivery <postmaster@mstr3.srv.hcvlny.cv.net>
Subject: **Delivery Notification: Delivery has failed**
Date: June 25, 2010 7:38:34 AM EDT
To: azaratzian@optonline.net

1 Attachment, 2.4 KB

This report relates to a message you sent with the following header fields:

Message-id: <4828F3FB882B5C4582CFDF49EBACC37E2ADFCE80@VSLCEXMBP01.mychg.com>
Date: Fri, 25 Jun 2010 11:38:23 +0000
From: Dee Barney <Dee.Barney@weatherbylocums.com>
To: "azaratzian@optonline.net" <azaratzian@optonline.net>
Subject: Good Morning!

Your message cannot be delivered to the following recipients:

Recipient address: rabadir@optonline.net
Original address: azaratzian@optonline.net
Reason: unknown or illegal alias

Reporting-MTA: dns;mstr3.srv.hcvlny.cv.net (tcp-daemon)

Original-recipient: rfc822;azaratzian@optonline.net
Final-recipient: rfc822;rabadir@optonline.net
Action: failed
Status: 5.1.1 (unknown or illegal alias)

From: Dee Barney <Dee.Barney@weatherbylocums.com>
Date: June 25, 2010 7:38:23 AM EDT
To: "azaratzian@optonline.net" <azaratzian@optonline.net>
Subject: **Good Morning!**

Good morning Annabell, I do have dates open in the afternoon, at St. Elizabeth, for the months of August, Sept, Oct, Nov, and Dec.  If you are interested in booking any additional dates, beyond what you have already booked, please give me a call at 919 659 1637

Hope all is going well, and that you are enjoying your days at St. Elizabeth. Thank you, Dee

Thank you,

EXHIBIT A

# VERIFICATION

State of Connecticut      )
                          ) ss. GREENWICH
County of Fairfield       )

Annabelle Zaratzian, being duly sworn, declares that she has read the foregoing Complaint and that the allegations therein are true and correct and based upon personal knowledge or if stated on information and belief, are believed to be true.

_____
Annabelle Zaratzian

On December 2, 2010 Annabelle Zaratzian appeared before me, the undersigned officer, known and identified to me, who upon her oath executed the following verification.

_____
Harold R. Burke
Commissioner, Superior Court
State of Connecticut