

RECEIVED
OCT 16 2012
CHAMBERS OF
VINCENT L. BRICCETTI
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ANNABELLE ZARATZIAN | ) | |
| PLAINTIFF | ) | 10 CIV09049 (VB)(PD) |
| | ) | SECOND AMENDED |
| V. | ) | COMPLAINT AND JURY DEMAND |
| | ) | |
| ADEL RAMSEY ABADIR and | ) | |
| LARRY M. CARLIN | ) | |
| DEFENDANTS | ) | October 12, 2012 |

## SECOND AMENDED COMPLAINT

Plaintiff, ANNABELLE ZARATZIAN, for her Complaint for damages and injunctive relief against Defendants, ADEL RAMSEY ABADIR and LARRY M. CARLIN, states the following:

## PARTIES

1. Plaintiff Annabelle Zaratzian ("Zaratzian") is a resident of West Harrison, New York.

2. Defendant Adel Ramsey Abadir ("Abadir") is a resident of White Plains, New York.

3. Defendant Larry M. Carlin ("Carlin") is a licensed New York attorney, whose principal place of business is New York, New York and upon information and belief is a resident of New York, New York.

4. Zaratzian and Abadir were formerly married having divorced on December 21, 2006. Abadir retained Carlin to represent him in conjunction with the divorce. Carlin has also represented Abadir in post-judgment proceedings between Zaratzian and Abadir currently pending before the Supreme and Family Courts within and for the County of Westchester.

5. Abadir initially filed an action for dissolution of marriage in February 2000. This action was withdrawn in May 2000. The parties then proceeded to reside together until they again separated on or about September 18, 2005. The five year period between the withdrawal of the first action and the parties' later separation was contentious and marked with physical violence and repeated police involvement. The ensuing second matrimonial action, initiated by Zaratzian, remained contentious until a settlement was reached on or about December 19, 2006.

## JURISDICTION AND VENUE

6. This Court has jurisdiction under 28 U.S.C. § 1331 based upon Abadir and Carlin's violations of Title 3 of the Omnibus Crime Control and Safe Streets Act of 1968, specifically: 18 U.S.C. § 2510 *et seq.*, the Wire and Electronics Communications Interception Act; and, 18 U.S.C. § 2701 *et seq.* the Stored Wire and Electronic Communications Privacy Act".

7. This Court has pendent jurisdiction of the related state law claims asserted in this complaint pursuant to 28 U.S.C. § 1367 because they arise from a nucleus of operative facts common to the causes of action arising under Counts One and Two, and because the exercise of pendent jurisdiction serves the interests of judicial economy, convenience and fairness to the parties.

8. Venue in this district is proper pursuant to 28 U.S.C. § 1391(b)(2) since some, or all, of the conduct which is the subject of this complaint occurred in Westchester County, New York.

## COMMON ALLEGATIONS

9. Following the parties' reconciliation, on August 30, 2001 Abadir entered into a contract with Cablevision for the purpose of obtaining Internet and electronic mail ("e-mail")

services on behalf of himself and Zaratzian. This Cablevision service is known commercially as "Optimum On-Line". At Abadir's request, Cablevision subsequently assigned an e-mail address of AZARATZIAN@OPTONLINE.NET to Zaratzian and RABADIR@OPTONLINE.NET to Abadir. Thereafter, Abadir had the ability to transmit and receive e-mail using his e-mail address, and in fact utilized said account through June 4, 2009. Upon information and belief, Abadir had exclusive access to e-mail account RABADIR@OPTONLINE.NET at all relevant times herein. Similarly, Zaratzian utilized her e-mail address to transmit and received personal and professional e-mail over the Internet through the present date. At all relevant times herein, Zaratzian considered her e-mail account to be private and its contents confidential.

10. Abadir initially configured Zaratzian's e-mail account and had access to the password utilized by Zaratzian. By virtue of his access to Zaratzian's account password, Abadir had access to all settings and features contained within Zaratzian's e-mail account.

11. At all relevant times herein, Cablevision's Optimum On-Line e-mail service contained a feature permitting an e-mail user to automatically forward ("auto-forward") incoming e-mail to another specifically designated e-mail address. Anyone having password access to an e-mail account can enable this feature electronically by checking an activation box located on the appropriate screen and then entering the address or addresses to which all incoming e-mail is to be forwarded. Unless an e-mail user is independently aware that the "auto-forward" feature has been enabled, the Optimum On-line e-mail program does not warn an e-mail account holder that the feature has been enabled or that all incoming e-mail is being automatically forwarded on to another e-mail account.

12. Following her separation from Abadir in September 2005, Zaratzian changed the e-mail password to her account and thereafter believed that her e-mail communications were

secure, inaccessible to Abadir, and would thereafter remain private and confidential. At this point in time Zaratzian also assumed full responsibility for the Cablevision contract and thereafter paid all user fees in connection with the master account. This contract has remained in full force and effect through the present date.

13. On June 4, 2009, Zaratzian contacted Cablevision to discuss her cable, telephone and Optimum On-Line accounts. During the course of this contact, Zaratzian discovered that in addition to her own e-mail account (i.e. AZARATZIAN@OPTONLINE.NET) another active e-mail account was being maintained by Cablevision through her master account and at her expense. This email account was the one which Abadir had set up for himself in 2001, i.e. RABADIR@OPTONLINE.NET. In response to discovering this information, Zaratzian instructed the Cablevision representative to close the RABADIR@OPTONLINE.NET e-mail account.

14. Following Cablevision's closure of the RABADIR@OPTONLINE.NET e-mail account on June 4, 2009, Zaratzian began receiving recurrent e-mail messages containing the subject line: "Delivery Notification: Delivery has failed."

15. Upon confirming that her own direct outgoing e-mail messages were indeed being transmitted to the intended recipients, Zaratzian disregarded the error messages until she finally examined a series of such messages in late June 2010. A copy of one such message dated June 25, 2010 is attached hereto as "Exhibit A" and is representative of all such messages received after June 4, 2009.

16. Upon careful examination of the error messages, Zaratzian discovered that the original incoming e-mail messages directed to her at AZARATZIAN@OPTONLINE.NET had apparently been in turn forwarded to e-mail account "RABADIR@OPTONLINE.NET. Further, each error message stated that the delivery transmission attempt to RABADIR@OPTONLINE.NET had

failed. As it appeared from the description contained on the error message that an attempt was being made to forward all of her incoming e-mail messages to RABADIR@OPTONLINE.NET, Zaratzian contacted Cablevision technical support on June 27, 2010 seeking an explanation for the error messages.

17. With the assistance of a Cablevision representative, Zaratzian discovered that a setting on her e-mail account had been enabled thereby activating Optimum On-line's e-mail "auto-forwarding" feature. She also discovered that the recipient e-mail address for all forwarded e-mail was designated as RABADIR@OPTONLINE.NET.

18. At some time prior to mid-September, 2005, the last date that Abadir had access to Zaratzian's e-mail account and original password, Abadir intentionally, and without prior notice to Zaratzian, enabled the "auto-forwarding" feature on Zaratzian's Optimum On-line e-mail account, and designated e-mail address "RABADIR@OPTONLINE.NET" as the recipient address for all forwarded e-mails.

19. By enabling this feature on Zaratzian's e-mail account, Abadir provided Optimum On-Line with a standing instruction to automatically send a copy of each and every e-mail directed to or received by Zaratzian to RABADIR@OPTONLINE.NET. As a result of Abadir's actions, each and every e-mail Zaratzian received from the date the "auto-forward" feature was activated through June 4, 2009 was automatically forwarded on to Abadir's e-mail account at RABADIR@OPTONLINE.NET.

20. The e-mail communications forwarded on to the RABADIR@OPTONLINE.NET e-mail account included Zaratzian's private, confidential and privileged electronic communications with various third parties, including her attorneys and accountant. Given that Abadir was receiving copies of all incoming e-mail, including all incoming attorney-client e-mail

communications and all attached message threads during the period September 2005 through December 19, 2006, Abadir had access to Zaratzian's communications which discussed matrimonial litigation strategy, settlement parameters, issues and concerns.

21. On various dates, including May 19, 2010, Abadir disclosed to Carlin the contents of the forwarded e-mails and/or the actual e-mails he obtained. Carlin, knowing or having reason to know, that Zaratzian's e-mail communications were obtained by Abadir through the interception of electronic communications and/or the accessing of stored communications, then disclosed and/or utilized the contents of Zaratzian's private and confidential electronic communications.

22. One example of Carlin utilizing in court proceedings surreptitiously obtained materials and/or information disclosed to him by Abadir, occurred on October 12, 2010. On October 12, 2010, Carlin, for the purpose of obtaining a court order requiring Zaratzian to pay 50% of certain expenses, stated to Westchester Family Court Judge Sandra Edlitz that Zaratzian had income of $400,000. The only information that Carlin or Abadir had previously received from Zaratzian with respect to her income was a December 2006 declaration that she expected to earn $300,000 when she started work in a new position at a medical facility. Zaratzian never disclosed her actual 2007, 2008, 2009 or 2010 earnings to Abadir or provided said information to Carlin.

23. However, by virtue of having Zaratzian's e-mail "auto-forwarded" to his own e-mail address, Abadir, obtained Zaratzian's complete 2008 income tax return which her accountant had electronically transmitted as an e-mail attachment to her on June 3, 2009. Shortly after Abadir obtained Zaratzian's 2008 income tax return, he made a comment to Zaratzian that he earned the same amount she did, $360,000. At the time, Zaratzian was stunned that Abadir

accurately knew how much she had earned in 2008 and could not understand how he came to know this information. Abadir provided Zaratzian's 2008 income tax return to Carlin on May 19, 2010.

24. The tax return transmitted on June 3, 2009 reported total income, including alimony, of $363,000. Not included in this amount was an additional $18,000 of child support, the sum of the two amounts being $381,000.

25. Carlin's assertion of fact to the Family Court – that Zaratzian had $400,000 of income – was within five percent of the total monies Zaratzian received in 2008. It was, however, a false statement given that Zaratzian was actually earning substantially less than $363,000 in 2010. Carlin successfully persuaded Judge Edlitz to require Zaratzian to pay continue paying 50% of the costs at issue.

26. Abadir intercepted the e-mail communications described in Paragraph 19 and 20, above, without the knowledge or consent of Zaratzian, and in violation of federal or state law.

## COUNT ONE
### (Violation of 18 U.S.C. § 2511 – "The Wiretap Act")

27. Paragraphs 1 through 26 of this complaint are realleged and incorporated herein as if more fully set out.

28. At all relevant times herein, The Electronic Communications Privacy Act, 18 U.S.C. § 2510 *et seq.* was in full force and effect and governed the acquisition and disclosure of electronic communications transmitted by electronic communications services.

29. At all relevant times herein, subject to specific exceptions, 18 U.S.C. § 2511 prohibited the intentional interception, disclosure, or use of the contents of any electronic

communications between two parties without the consent of one or both of the parties to that communication.

30. Abadir intentionally intercepted Zaratzian's electronic communications, i.e. e-mail, without her consent thereby violating 18 U.S.C. § 2511(1)(a).

31. Abadir intentionally disclosed or endeavored to disclose Zaratzian's electronic communications, i.e. e-mail, to Carlin, and upon information and belief to others, without Zaratzian's consent, while knowing or having reason to know that the information was obtained through the interception of wire, oral or electronic communication in violation of 18 U.S.C. § 2511(1)(c). Carlin intentionally disclosed or endeavored to disclose Zaratzian's electronic communications, without Zaratzian's consent, while knowing or having reason to know that the information was obtained through the interception of wire, oral or electronic communication in violation of 18 U.S.C. § 2511(1)(c).

32. Abadir and Carlin intentionally used, or endeavored to use, the contents of Zaratzian's electronic communications, i.e. e-mail, while knowing or having reason to know that the information was obtained through the interception of wire, oral or electronic communications in violation of 18 U.S.C. § 2511(1)(d).

33. Pursuant to 18 U.S.C. § 2520, Zaratzian is entitled to relief for the Abadir's violations of 18 U.S.C. § 2511(1)(a), (c), and (d) and Carlin's violations of 18 U.S.C. § 2511(1)(c) and (d).

**COUNT TWO**
**(Violation of 18 U.S.C. § 2701 - Stored Communications Act)**

34. Paragraphs 1 through 26 of this complaint are realleged and incorporated herein as if more fully set out.

35. At all relevant times herein, The Stored Communications Act, 18 U.S.C. § 2701 *et seq.* was in full force and effect and governed the accessing of facilities through which electronic communication service is provided.

36. At all relevant times herein, subject to specific exceptions, 18 U.S.C. § 2701(a) prohibited the intentional unauthorized accessing of a facility through which an electronic communication service is provided whereby an individual obtains access to an electronic communication which it is in electronic storage in such system.

37. Between 2001 and June 4, 2009, Abadir violated 18 U.S.C. § 2701(a) by intentionally and without Zaratzian's authorization repeatedly accessing electronic communications, i.e. e-mail, while said electronic communications were in electronic storage in systems maintained by Cablevision.

38. To the extent that Abadir was ever authorized to access Zaratzian's electronic communications while they were being electronically stored by Cablevision, said authorization terminated upon the parties' separation in September 2005 and/or upon her changing her e-mail account password. By intentionally accessing Zaratzian's e-mail after said authorization was either expressly or impliedly revoked, Abadir violated 18 U.S.C. § 2701(a).

39. Pursuant to 18 U.S.C. § 2707, Zaratzian is entitled to relief for the Abadir's violations of 18 U.S.C. § 2701(a).

### COUNT THREE
### (Per Se Tort - Violation of NY Penal Law Sec. 250)

40. Paragraphs 1 through 39 of this complaint are realleged and incorporated herein as if more fully set out.

41. Abadir had a statutory duty, pursuant to New York Penal Law § 250.05, to not commit electronic eavesdropping with respect to Zaratzian's electronic communications.

42. Zaratzian, is a user of electronic communications, and as such is a member of the class for whom the protections of this statute were enacted.

43. The legislative purpose behind this statute, the deterrence of illegal electronic eavesdropping, is enhanced and furthered through the private enforcement of tort remedies.

44. Abadir conducted himself in a manner that was malicious, oppressive, outrageous, willful, wanton, reckless, and abusive so as to entitle Zaratzian to compensatory and punitive damages.

## COUNT FOUR
### (Trespass to Chattels)

45. Paragraphs 1 through 44 of this complaint are realleged and incorporated herein as if more fully set out.

46. At all relevant time herein, Zaratzian held a possessory interest in her e-mail communications the intrinsic value of which was based in part upon the confidential and private nature of the communications.

47. Through his actions, Abadir intentionally intermeddled with Zaratzian's possessory interest in her e-mail communications.

48. By intermeddling with Zaratzian's e-mail communications, Abadir dispossessed Zaratzian of the confidential and private aspects of said communications and used the information contained therein for their personal and professional gain thereby impairing the condition, quality and value of Zaratzian's property.

49. By reason of the said trespass, Abadir conducted himself in a manner that was malicious, oppressive, outrageous, willful, wanton, reckless, and abusive so as to entitle Zaratzian to compensatory and punitive damages.

## COUNT FIVE
## (Constructive Fraud by Fiduciary)

50. Paragraphs 1 through 49 of this complaint are realleged and incorporated herein as if more fully set out.

51. During the parties' marriage through the date of their divorce on December 19, 2006, a fiduciary relationship existed between the parties by virtue of their being husband and wife.

52. On December 19, 2006, the parties entered into a marital separation agreement ("MSA"). The MSA was the product of several weeks of negotiations undertaken by and between the parties' attorneys, with Carlin representing Abadir. The MSA encompassed a resolution of the parties' financial affairs including a division of the parties' assets.

53. In the weeks leading up to the execution of the MSA, Zaratzian communicated with her attorney via e-mail, as she had during the pendency of the divorce. Her communications included discussion of factors central to the negotiation of the MSA, including asset distribution, child support, child custody and alimony.

54. Unbeknownst to Zaratzian, Abadir was surreptitiously receiving Zaratzian's e-mail communications and by virtue of such access knew Zaratzian's settlement parameters, including, for example, upon what terms she was willing to settle the issue of ownership of the marital residence.

55. Abadir knew or had reason to know that Zaratzian's communications with her attorney were confidential and privileged and if compromised would have a material effect on the outcome of the MSA and its terms.

56. As Zaratzian's fiduciary, Abadir owed her a duty to disclose to her all material facts and information in his possession that could reasonably bear on her consideration of the

MSA. He had a further obligation not to use information derived from an illegal wiretap, and not to use such information to the detriment of the Zaratzian.

57. Abadir breached his fiduciary duty to Zaratzian by: i) failing to inform her prior to and during the negotiation of the MSA that he was receiving copies of her e-mail communications, including her attorney client e-mail communications which included discussions regarding settlement parameters; ii) using information derived from a wiretap in violation of 18 U.S.C. § 2511(1)(d) to the detriment of the Zaratzian.

58. Abadir's actions damaged Zaratzian in that the financial terms of the MSA unreasonably favored Abadir and exceeded that which similarly situated parties in an arms-length transaction would have agreed upon.

59. Zaratzian was further damaged in that she agreed to the waiver and release of liability terms contained in the MSA without knowledge that Abadir was actively violating her federally secured rights under 18 U.S.C. § 2510 *et al.*, and/or 18 U.S.C. § 2707(b), as well as breaching his fiduciary duties to her.

## COUNT SIX
### (Temporary and Permanent Injunctive Relief Pursuant to 18 U.S.C. § 2520(b) and 18 U.S.C. § 2707(b))

60. Paragraphs 1 through 59 of this complaint are realleged and incorporated herein as if more fully set out.

61. As direct and proximate result of Abadir's conduct as described herein, Zaratzian has suffered irreparable harm through the loss of her confidential and private electronic communications. Given that Zaratzian and Abadir are currently engaged in New York Family Court litigation, proceedings in which Carlin represents Abadir, Abadir's misappropriation, possession and continued use and disclosure of the confidential information gained in violation

of state and federal law poses a substantial risk of irreparable harm. The total loss to Zaratzian in economic terms cannot be accurately measured at this time.

62. Zaratzian has a substantial likelihood of success on the merits of her claims. In addition, the magnitude of the injury being suffered due to Abadir's unlawful conduct heavily outweighs whatever hardship Abadir's could allege or prove from being restrained as requested.

63. The granting of the injunctive relief requested herein will not adversely affect any public policy or public interest.

64. Injunctive relief, as an equitable remedy, is authorized by 18 U.S.C. § 2520(b) and 18 U.S.C. § 2707(b)), and as such Zaratzian need not demonstrate an irreparable injury or inadequacy of other remedies, but merely show a *prima facie* case of illegality and that an injunction would fulfill the legislative purpose of the statute. A temporary restraining order and preliminary injunction will fulfill the purposes of these statutes.

65. At this point, Zaratzian has no adequate remedy at law and is suffering immediate, imminent, and irreparable harm. Should Abadir's actions in using and disclosing the communications and information illegally obtained continue unabated, they will continue to harm Zaratzian's ability to proceed in Family Court as well impact her privacy interests.

66. Further, a substantial risk exists that in the absence of an appropriate order directing Abadir to preserve material evidence, Abadir will destroy or conceal evidence supporting the claims articulated in this Complaint. Specific items at risk of spoliation include, but are not limited to: digital storage devices; computer hard drives; files stored on-line; stored e-mail communications; downloaded e-mail communications and any attachments thereto; correspondence or memoranda summarizing the contents of Zaratzian's electronic communication or e-mail. Given that much of the evidence at issue is likely to be in digital

format, the risk of loss through inadvertence, accident, or deliberate action is heightened. In the event that such evidence is lost, mishandled or destroyed, Zaratzian's ability to establish her claims and damages will be threatened with irreparable harm.

67. There is reason to believe that in the absence of an immediate order restraining the destruction or manipulation of material evidence, such items will be destroyed or concealed. In September 2005, during a one day lapse in a 7 day order of protection issued on behalf of Zaratzian, Abadir, unbeknownst to Zaratzian, entered the marital residence when Zaratzian was absent from the house. Upon Zaratzian's return she discovered Abadir in the house and he demanded to know where the family computer was and stated that it was his intention to take the computer with him. Earlier, Zaratzian had removed the computer from the house in order to have it forensically evaluated. The computer contained password protected folders to which Zaratzian had never been given access. Upon forensic evaluation large amounts of prurient material were discovered and it was determined that large amounts of data had recently been lost during the crash of the hard drive. Additionally, Zaratzian discovered that Abadir removed a large amount of documentation during his visit which Zaratzian believed to include financial records. Zaratzian was never able to determine the full extent of the items removed by Abadir.

68. Issuance of a temporary restraining order requiring Abadir to preserve all material evidence in their possession, custody or control would aid in fulfilling the remedial purposes articulated in 18 U.S.C. § 2520(c) and 18 U.S.C. § 2707(c).

69. Zaratzian has not provided notice to Abadir of this action or the relief sought herein on the grounds that to do so would accelerate the risk of destruction of evidence which Zaratzian is seeking to prevent. As to the requirement of a bond, the Court should set a minimum bond amount of no more than $100.00 on the grounds that the relief being sought will

not cause damage to Abadir in that Abadir have no legal right to possess, disclose or use Zaratzian's electronic communications or any derivative materials.

70.     Accordingly, Zaratzian requests a temporary restraining order and temporary and permanent injunctions against Abadir, his agents, servants, employees and those persons in active concert or participation with them, from:

(a) Deleting, altering, destroying or removing any e-mails or electronic communications directly or indirectly originating from Zaratzian's e-mail account, i.e. AZARATZIAN@OPTONLINE.NET;

(b) Deleting, altering, destroying or removing any e-mails or electronic communications directly or indirectly originating from Abadir's e-mail account, i.e, RABADIR@OPTONLINE.NET;

(c) Deleting, altering, destroying or removing any hard copy of any e-mails or electronic communications or attachments thereto which directly or indirectly originated from Zaratzian's e-mail account, i.e. AZARATZIAN@OPTONLINE.NET ;

(d) Deleting, altering, destroying or removing any summary of any e-mails or electronic communications or attachments thereto which directly or indirectly originated from Zaratzian's e-mail account, i.e. AZARATZIAN@OPTONLINE.NET ;

(e) Directly or indirectly using or disclosing any information contained within any of Zaratzian's electronic communications or documents attached to any such electronic communications that Abadir may have received;

71. Zaratzian further requests that the Court enter Temporary Restraining Orders requiring:

(a) Abadir and his agents to preserve any and all evidence of any disclosure or dissemination of Zaratzian's electronic communications or any information contained therein;

(b) Abadir and his agents to preserve any and all portable or fixed electronic storage devices, including but not limited to, hard drives, floppy disks, on-line storage, thumb or zip drives, compact disks or flash drives, containing e-mails or electronic communications directly or indirectly originating from Zaratzian's e-mail account, i.e. AZARATZIAN@OPTONLINE.NET or any e-mail account utilized by Abadir, or any summaries of information derived from Zaratzian's e-mail or electronic communications which may contain evidence of any disclosure or dissemination of Zaratzian's electronic communications or any information contained therein;

(c) that pending further order of this Court, all items and materials covered by this order shall be preserved in such a manner as to maintain the integrity of the data, including all associated meta-data existing as of the date of this order;

(d) that the Court, pursuant Fed. R. Civ. P. 53, appoint a Special Master with training or knowledge in computer forensics to examine all electronic storage devices and media in the possession, custody or control of Abadir, to the extent that such items were used to store data related to any interception of Zaratzian's electronic communications or e-mail at any

time prior to the date of service of this Order, for the purpose of identifying any electronic communications or data material to this action, and to perform any other function or duty ordered by the Court. Zaratzian will incur the expenses to have each such item imaged for the purposes of preserving, cataloging and subject to further order, locating evidence.

72. The Temporary Restraining Order, as requested above, is warranted in that it would be of assistance in preserving the status quo.

WHEREFORE, Zaratzian requests a trial by jury and that judgment enter against Abadir and Carlin as follows:

1. Compensatory damages;
2. Statutory damages pursuant to 18 U.S.C. § 2520(c) and 18 U.S.C. § 2707(c);
3. Punitive damages pursuant to 18 U.S.C. § 2520(b) and 18 U.S.C. § 2707(c) and the common law;
4. Attorney's fees and costs pursuant to 18 U.S.C. § 2520(b), 18 U.S.C. § 2707(b) and 42 U.S.C.§ 1988;
5. A temporary and permanent order, pursuant to 18 U.S.C. § 2520(b) and 18 U.S.C. § 2707(b), directing Abadir and Carlin to return to Zaratzian all copies of all electronic communications, whether stored in an electronic format or printed;

6. A temporary and permanent order, pursuant to 18 U.S.C. § 2520(b) and 18 U.S.C. § 2707(b), barring Abadir and Carlin from disclosing the contents of any electronic communications obtained in violation of federal law.

7. A temporary and permanent order, pursuant to 18 U.S.C. § 2520(b) and 18 U.S.C. § 2707(b), directing Abadir to cease and desist from engaging in any electronic monitoring, surveillance or wiretapping of Zaratzian;

8. A temporary restraining order issue pursuant to 18 U.S.C. § 2520(b) and 18 U.S.C. § 2707(b), ordering Abadir to preserve all documentary and physical evidence in their care, custody or control, including all electronic devices that may contain any evidence of Zaratzian's electronic communications;

9. A declaration that the waiver and release provisions in the marital separation agreement dated December 19, 2006 are void.

10. Such further and additional relief as this Court may find to be fair and equitable.

ANNABELLE ZARATZIAN

By _____
Harold R. Burke (HB0149)
Law Offices of Harold R. Burke
P.O. Box 4078
21 Sherwood Place
Greenwich, CT 06830
Telephone: (203) 219-2301
Facsimile: (203) 413-4443
E-Mail: hrb@burke-legal.com

# EXHIBIT A

From: Internet Mail Delivery <postmaster@mstr3.srv.hcvlny.cv.net>
Subject: **Delivery Notification: Delivery has failed**
Date: June 25, 2010 7:38:34 AM EDT
To: azaratzian@optonline.net
   1 Attachment, 2.4 KB

This report relates to a message you sent with the following header fields:

Message-id:
<4826F3FB882B5C4582CFDF49EBACC37E2ADFCE80@VSLCEXMBP01.mychg.com>
Date: Fri, 25 Jun 2010 11:38:23 +0000
From: Dee Barney <Dee.Barney@weatherbylocums.com>
To: "azaratzian@optonline.net" <azaratzian@optonline.net>
Subject: Good Morning!

Your message cannot be delivered to the following recipients:

Recipient address: rabadir@optonline.net
Original address: azaratzian@optonline.net
Reason: unknown or illegal alias

Reporting-MTA: dns;mstr3.srv.hcvlny.cv.net (tcp-daemon)

Original-recipient: rfc822;azaratzian@optonline.net
Final-recipient: rfc822;rabadir@optonline.net
Action: failed
Status: 5.1.1 (unknown or illegal alias)

From: Dee Barney <Dee.Barney@weatherbylocums.com>
Date: June 25, 2010 7:38:23 AM EDT
To: "azaratzian@optonline.net" <azaratzian@optonline.net>
Subject: **Good Morning!**

Good morning Annabell, I do have dates open in the afternoon, at St. Elizabeth, for the months of August, Sept, Oct, Nov, and Dec.   If you are interested in booking any additional dates, beyond what you have already booked, please give me a call at 919 659 1637

Hope all is going well, and that you are enjoying your days at St. Elizabeth.
Thank you, Dee

Thank you,

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANNABELLE ZARATZIAN    )
                  PLAINTIFF )
                           )
V.                         )    10 CIV 09049 (VB )
                           )
ADEL RAMSEY ABADIR AND     )
LARRY M. CARLIN            )
                  DEFENDANTS )

## CERTIFICATION OF SERVICE

I hereby certify that on October 15, 2012, a copy of foregoing was filed electronically and served electronically and by mail upon the following counsel of record and pro se parties:

Nathaniel Z. Marmur, Esq.
Stillman, Friedman & Shechtman, P.C.
425 Park Avenue
26th Floor
New York, NY 10022
nmarmur@stillmanfriedman.com

Larry M. Carlin, Esq.
437 Madison Avenue, Floor 35
New York, NY
lmcarlinlaw@msn.com

Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ *Harold R. Burke*
Harold R. Burke (hb0149)
Law Offices of Harold R. Burke
P.O. Box 4078
21 Sherwood Place
Greenwich, CT 06830
Telephone: (203) 219-2301
Facsimile: (203) 413-4443
E-Mail:   hrb@burke-legal.com