UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------
ANNABELLE ZARATZIAN,

                                                     Plaintiff,

             -against-

ADEL RAMSEY ABADIR and LARRY M. CARLIN,

                                        Defendants.
-------------------------------------------------------------------------

10 CIV 09049 (VB)

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT LARRY M. CARLIN'S <u>MOTION FOR SUMMARY JUDGMENT</u>

**Larry M. Carlin, Esq.**
**437 Madison Avenue**
**New York, New York  10022**
**(212) 622-7180**

*Pro Se*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... ii

INTRODUCTION ............................................................................................................ 1

THE FACTS ................................................................................................................... 1

BACKGROUND ............................................................................................................. 2

ARGUMENT .................................................................................................................. 7

CONCLUSION ............................................................................................................. 14

# TABLE OF AUTHORITIES

**Cases**

United States v. Wuliger, 981 F.2d 1497, 1499 (6th Cir. 1992)................................................. 7, 14

Zinna v. Cook, 428 Fed. Appx. 838, 840 (10th Cir. 2011)........................................................... 7

Babb v. Eagleton, 614 F. Supp. 2d 1232, 1244 n.6 (N.D. Okla. 2008) .................................... 7, 13

Thompson v. Dulaney, 970 F.2d 744 (10th Cir. 1992)............................................................. 7, 8

McCann v. Iroquois Memorial Hospital, 622 F.3d 745, 753 (7th Cir. 2010) ........................... 8, 13

Nix v. O'Malley, 160 F.3d 343, 349 (6th Cir. 1998).................................................................... 8

Garback v. Lossing, 2010 WL 3733971 (E.D. Mich. Sept. 20, 2010)......................................... 12

Weeks v. Union Camp Corp., 215 F.3d 1323, 1505 (4th Cir. 2000) ........................................... 13

Mayes v. Lin Television of Texas, Inc., 1998 WL 665088 (N.D. Tex. Sept. 22, 1998) .............. 14

**Statutes**

Wiretap Act, 18 U.S.C. § 2511(1)(c), (d) ................................................................................ 6, 7

Wiretap Act, 18 U.S.C. § 2511(1)(d)......................................................................................... 12

**Federal Rules of Civil Procedure**

Rule 12(b) ................................................................................................................................. 12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------
ANNABELLE ZARATZIAN,

                                                    10 CIV 09049 (VB)

                            Plaintiff,


        -against-


ADEL RAMSEY ABADIR and LARRY M. CARLIN,


                            Defendants.

-------------------------------------------------------------------------

## **INTRODUCTION**

The Second Amended Complaint alleges that I violated the Wiretap Act by using

or disclosing information derived from an unlawful interception, specifically an e-mail from

Dr. Abadir which attached plaintiff's 2008 tax return and related tax documents.  The standard

for third-party liability under the Wiretap Act is very high and requires more than just intentional

conduct--plaintiff must show that I <u>knew</u> that the e-mail was the product of an <u>interception</u>, and

further that I <u>knew</u> and possessed sufficient facts surrounding the circumstances of the

interception such that I could determine that the interception was unlawful.  Plaintiff is unable to

adduce evidence on either of these points.  As a result, I am entitled to summary judgment

dismissing plaintiff's complaint against me.

## **THE FACTS**

The relevant facts are mostly set forth in the statement of undisputed facts

submitted by defendant, Adel Ramsey Abadir (hereinafter "Dr. Abadir") which I adopt and are

hereby incorporated by reference.  Those facts are supplemented by my own accompanying

statement of undisputed facts, as well as the facts set forth below.

## BACKGROUND

The facts in this case are straightforward and are largely set forth in the brief of

Dr. Abadir, which I fully adopt.  I add only those facts relevant to the claims against me.  Simply

stated, plaintiff's claims against me turn on one e-mail that Dr. Abadir supposedly intercepted

from the plaintiff in 2009 and sent to me from his own e-mail account on May 18, 2010 (Exhibit

A).  The subject line stated:  "Annabelle 2008 RETURN & AUTHORIZATION FORM."  The

text of the e-mail read, in full, "Enclosed are materials that may be useful."  Attached to the e-

mail were various documents prepared by Gomez Accounting, LLC, dated June 3, 2009, which

related to plaintiff's 2008 tax return.  The e-mail does not indicate that it was forwarded from

another e-mail account, nor does it reveal the provenance of the accounting documents.

Plaintiff's entire claim against me is based on the single e-mail forwarded to me

by Dr. Abadir.  Plaintiff's Second Amended Complaint (Exhibit B) alleges as follows:[1]

> 21.     On various dates, including May 19, 2010,
> Abadir disclosed to Carlin the contents of the
> forwarded e-mails and/or the actual e-mails he
> obtained.  Carlin, knowing or having reason to know,
> that Zaratzian's e-mail communications were
> obtained by Abadir through the interception of
> electronic communications and/or the accessing of
> stored communications, then disclosed and/or
> utilized the contents of Zaratzian's private and
> confidential electronic communications.
>
> 22.     One example of Carlin utilizing in court
> proceedings surreptitiously obtained materials and/or
> information disclosed to him by Abadir, occurred on
> October 12, 2010.  On October 12, 2010, Carlin, for
> the purpose of obtaining a court order requiring
> Zaratzian to pay 50% of certain expenses, stated to
> Westchester Family Court Judge Sandra Edlitz that
> Zaratzian had income of $400,000.  The only

---

[1] Pursuant to agreement, plaintiff's proposed Second Amended Complaint was adopted by all parties as plaintiff's complaint.

information that Carlin or Abadir had previously received from Zaratzian with respect to her income was a December 2006 declaration that she expected to earn $300,000 when she started work in a new position at a medical facility. Zaratzian never disclosed her actual 2007, 2008, 2009 or 2010 earnings to Abadir or provided said information to Carlin.

23. However, by virtue of having Zaratzian's e-mail "auto-forwarded" to his own e-mail address, Abadir, obtained Zaratzian's complete 2008 income tax return which her accountant had electronically transmitted as an e-mail attachment to her on June 3, 2009….

. . .

25. Carlin's assertion of the fact to the Family Court - that Plaintiff had $400,000 of income - was within five percent of the total monies Plaintiff received in 2008. It was, however, a false statement given that Plaintiff was actually earning substantially less than $363,000 in 2010. Carlin successfully persuaded Judge Edlitz to require Plaintiff to pay continue paying [sic] 50% of the costs at issue.

Magistrate Judge Davison, in ruling on certain privilege issues, conducted a

thorough analysis of <u>all</u> of my communications with Dr. Abadir. In his order dated January 29,

2013 (Exhibit C), Magistrate Judge Davison stated:

The Court has received and studied plaintiff's December 27, 2012 "roadmap" letter and, with the factual issues identified by plaintiff's counsel in mind, has carefully reviewed 313 pages of documents submitted by Carlin for *in camera* inspection. Based upon that review, the Court has determined that the documents do not establish probable cause to believe that there were any additional communications between the defendants which involved information which a prudent person would believe was obtained through a violation of the Wiretap Act.

3

At her deposition on July 15, 2013 (pages 26-27), plaintiff testified as follows (Exhibit D):

> Q.   Other than the e-mail that was sent to me by Dr. Abadir, that is your 2008 tax return that you just testified to, other than that e-mail, do you have knowledge of any other e-mail that was sent to you and received by Dr. Abadir and then sent by Dr. Abadir to me?
>
> A.  No.

At my examination before trial, I testified that I first learned that Dr. Abadir was receiving the plaintiff's e-mails when I was served with the complaint in this matter in December 2010.  With respect to the tax return Dr. Abadir forwarded to me in May 2010 (Exhibit A), I testified that Dr. Abadir did not tell me how he obtained the plaintiff's tax return, nor did I ask him how he obtained the tax return.  I testified on these subjects as follows (Exhibit E, Carlin testimony from examination before trial on April 3, 2013, pages 86-92):

> [Exhibit E, page 86, lines 4-16]:
>
> Q.      When is the first time that you learned that Dr. Abadir had been obtaining copies of Dr. Zaratzian's e-mails without her permission?
>
> A.      I know that this proceeding started in or about December of 2010.
>
> Q.      Please answer the question.
>
> A.      I just did.

Q.    You didn't.  When did you learn that
      Dr. Abadir had been obtaining copies of his
      wife's e-mail without her permission?
      When did you first learn that?

A.    I read the complaint, and I read the
      allegations when it was served on me.

. . .

[Exhibit E, page 88, lines 5-15]:

Q.    Dr. Abadir sent you a copy of his ex-wife's
      tax return on May 18, 2010?

A.    That's correct.

Q.    Prior to your receipt of the e-mail containing
      the return, did Dr. Abadir tell you that he
      had a copy of the return?

A.    No.

Q.    After you received the return from him, did
      you have a communication with him that
      covered the fact that you had received the
      return?

A.    We talked about the return.

. . .

5

[Exhibit E, page 89, lines 8-13]:

Q.   What did you ask Mr. Abadir about the
     returns?

A.   I did nothing more than say that it's good
     that she earned money in the context of what
     was then a pending modification
     proceeding--modification of child support.[2]

. . .

[Exhibit E, page 91, line 25 - page 92, line 4]:

Q.   Did you ask Dr. Abadir how he happened to
     obtain a copy of his wife's 2008 tax return
     when he had already been divorced from his
     wife for several years?

A.   No.

. . .

[Exhibit E, page 92, lines 14-16]:

Q.   Did Dr. Abadir tell you how he obtained the
     return?

A.   No.

---

[2]

In April 2010, plaintiff commenced a proceeding in the Family Court, Westchester County, in
which she sought to modify the joint custody arrangement set forth in the parties' Separation
Agreement.  Thereafter, on or about May 5, 2010, plaintiff filed a separate proceeding in the
same court to modify the support provisions contained in the parties' Separation Agreement.  On
or about May 18, 2010, Dr. Abadir sent the e-mail to me (Exhibit A) which contained plaintiff's
2008 tax return.  On September 14, 2010, plaintiff withdrew, without prejudice, the proceeding
to modify the support provisions of the parties' Separation Agreement.

6

## ARGUMENT

Plaintiff seeks to hold me liable for a civil violation of 18 U.S.C. §2511(1)(c) and (d), the sections of the Wiretap Act that, as relevant here, make it unlawful for a person to intentionally use or disclose to any other person the contents of an electronic communication "knowing or having reason to know that the information was obtained through the <u>interception</u> of a[n]...electronic communication in violation of this subsection."

In order to establish liability for use and disclosure, the Act requires a higher degree of proof than for a primary violation--a plaintiff must demonstrate that the defendant both knew (or should have known) that the material was the product of an interception <u>and</u> knew (or should have known) that the interception was unlawful.  <u>United States v. Wuliger</u>, 981 F.2d 1497, 1499 (6th Cir. 1992) ("knowledge or reason to know of the illegality is an element of the offense").  <u>See also</u>, <u>Zinna v. Cook</u>, 428 Fed. Appx. 838, 840 (10th Cir. 2011)(use or disclosure claim "has a significant <u>mens rea</u> element on top of the use or disclosure element"); <u>Babb v. Eagleton</u>, 614 F. Supp. 2d 1232, 1244 n.6 (N.D. Okla. 2008) (use or disclosure claim requires proof of "a greater degree of knowledge than that required to establish [interception itself]").

The leading case on this issue is <u>Thompson v. Dulaney</u>, 970 F.2d 744 (10th Cir. 1992), in which the court addressed the language of § 2511(1)(c) and (d) as follows:

> Before discussing the balance of [plaintiff's] claims
> against experts...and attorneys...we examine use
> and disclosure liability under Title III.  Liability for
> *intercepting* or procuring another to intercept
> communications under subsections (a) and (b) of §
> 2511(1) requires that a plaintiff prove intentional
> conduct.  <u>However, liability under subsections (c)</u>
> <u>and (d) of § 2511(1) for *use and disclosure* of</u>
> <u>information obtained from the contents of</u>
> <u>intercepted communications requires more</u>.  The use
> or disclosure must still be intentional, but in

7

> addition, **a plaintiff must show** that a defendant
> "know[s] or ha[s] reason to know that the
> information was obtained through the <u>interception</u>
> of a wire, oral, or electronic communication in
> violation of this subsection." This language, found
> in each of subsections (c) and (d), compels the
> conclusion that, to establish liability under one of
> those sections, **a plaintiff must demonstrate** a
> greater degree of knowledge on the part of a
> defendant. [The plaintiff must demonstrate that] the
> defendant knew 1) the information used or
> disclosed came from an <u>intercepted</u> communication,
> and 2) sufficient facts concerning the circumstances
> of the <u>interception</u> such that the defendant could,
> with presumed knowledge of the law, determine
> that the interception was prohibited in light of Title
> III. [Emphasis Added]

The <u>Thompson</u> holding is clear. In order to establish liability against me, <u>plaintiff must</u>

<u>demonstrate</u> that I knew that the e-mail was <u>intercepted</u> (rather than merely obtained by

Dr. Abadir by innumerable other methods) and that I <u>knew</u> the method and mechanics put in

place by Dr. Abadir to intercept the e-mail. "[I]t is not enough to know that the conversation was

intercepted." <u>McCann v. Iroquois Memorial Hospital</u>, 622 F.3d 745, 753 (7th Cir. 2010). A

plaintiff "cannot overcome summary judgment merely by showing that it was reasonably

foreseeable that the interception occurred illegally." <u>Nix v. O'Malley</u>, 160 F.3d 343, 349 (6th

Cir. 1998) (citations omitted).

      The critical point is that plaintiff must prove more than that the e-mail may have

been purloined from her computer or e-mail account. She must come forward with evidence

specifically showing that I was aware of the <u>underlying facts of the interception</u>. Even assuming

that the e-mail should have raised a red flag, there is no proof that I was aware of <u>how</u> Dr. Abadir

obtained the tax return. That is to say, even if I suspected that Dr. Abadir had obtained the e-

mail through nefarious means, there are no facts that come close to suggesting that I was aware

8

that an <u>interception</u> had occurred (if, in fact, an interception did occur).  All of the proof

proffered by me uniformly demonstrates that I was unaware of the source of the e-mail or the

method by which Dr. Abadir obtained the tax return.  With that as a starting point, plaintiff has

the burden of coming forward and demonstrating that I <u>knew</u> the e-mail was <u>intercepted</u> and that

I knew the method used by Dr. Abadir to intercept the e-mail.

      In order to establish liability, plaintiff relies almost exclusively on my mere

receipt of the e-mail.  However, the e-mail, standing alone, cannot result in liability against me.

Magistrate Davison, in the context of addressing a discovery issue, flatly rejected any notion that

an inference of knowledge could be drawn from the e-mail, calling it "the most terse, opaque

transmittal e-mail as could be imagined."  Exhibit F, Transcript dated February 15, 2012, at

page 12, lines 10-11.  This description was apt.  The e-mail does not indicate that its source was

another e-mail, much less that it emanated from plaintiff's account (as it would had it been

forwarded).  This means that Dr. Abadir likely cut the attachment (the tax returns), appended it

to a fresh e-mail, and sent it to me, obfuscating that its source was plaintiff's e-mail account.  In

the February 15, 2012 proceedings before Magistrate Judge Davison, the following exchange

concerning this issue took place between the Court and plaintiff's counsel (Exhibit F, page 8,

lines 15-18):

> THE COURT:  The e-mail to which you refer is
> completely silent as to wire tapping or the source of
> the attachments; is that correct?
>
> MR. BURKE:  That's correct....

      However, even if it could be inferred that something was amiss about the e-mail,

plaintiff must still pile conjecture upon conjecture to establish liability against me.  Plaintiff must

demonstrate that I also should have known that the underlying source of the tax return was an

intercepted e-mail from plaintiff's e-mail.  Even had I suspected that the tax material was not

voluntarily given to Dr. Abadir, there are countless ways he could have obtained it other than by

an intercepted e-mail.  Just to name a few:  (i) plaintiff could have left it somewhere, such as at a

court appearance, by accident); (ii) the accountant could have sent it to Dr. Abadir by mistake; [3]

(iii) it could have been accidentally sent to Dr. Abadir; (iv) one of the children could have

brought it to Dr. Abadir; or (v) Dr. Abadir could have sneaked into plaintiff's house and stolen it.

All of these are possibilities, but none of which would lead to Wiretap Act liability because they

do not involve an interception.  Again, plaintiff must demonstrate that I knew the e-mail was

intercepted and knew the details (circumstances) of the interception.

Even if we were to assume that not only did I suspect that the tax returns were

improperly obtained by Dr. Abadir, but that they had to have come from plaintiff's e-mail, that

speculation would not result of liability, since there are other possibilities involving purloined

e-mail that do not establish third-party wiretapping liability.  For example, plaintiff could have

accidentally forwarded the e-mail, as people do from time to time (or perhaps the accountant had

e-mailed the wrong spouse).  Alternatively, Dr. Abadir could have accessed the plaintiff's e-mail

account and obtained this document either because he knew her password or because he had

hacked into the account.  **None of these possibilities would result in liability**.

In ruling on plaintiff's motion for an indicative ruling, this Court was confronted

**only** with the issue of whether plaintiff's complaint stated a viable cause of action at the pleading

stage.  In its decision dated May 30, 2012 (Exhibit G), this Court posited that it was plausible I

could have surmised an unlawful interception.  Respectfully, what this Court wrote undermines

---

[3] During the period in question, Dr. Abadir was paying maintenance to the plaintiff.  As a result,
information relating to Dr. Abadir would have been provided to plaintiff's accountant.

its own conclusion.  At page 7 of the May 30, 2012 decision, the Court determined that

plaintiff's allegations "plausibly put Carlin on notice that Abadir had obtained his ex-wife's

confidential information <u>by accessing</u> and/or intercepting, without authorization, her email

communications" (emphasis added).  Because the legal issues were not fully briefed at that time,

the Court may have been unaware that it is not enough for me to have merely known that

Dr. Abadir had "access[ed]" plaintiff's account; the law requires that I must have <u>known</u> that he

had "<u>intercepted</u>" her e-mails.[4]

        Furthermore, though not critical to this motion, had I assumed that the tax

materials were improperly obtained by some sort of improper access to plaintiff's e-mail

account, the far more likely scenario is that they were unlawfully accessed under the SCA, not

intercepted while in flight.  The <u>vast majority</u> of interspousal e-mail stealing cases (if not all)

involve SCA violations, where one party is alleged to have used the other's password without

permission, or obtained it improperly and hacked into the account, such as by using keylogging

software.  Moreover, that I received the e-mail nearly a year after the tax return had been

prepared underscores that I would have had no reason to believe there was any

_____

[4]

In its ruling, which <u>only</u> addressed the sufficiency of plaintiff's complaint, this Court wrote that it was plausible that the e-mail put me "on notice that Abadir had some sort of improper access to the confidential communications with his ex-wife." <u>Id.</u> at 10.  Respectfully, as set forth above, that is not the standard; knowledge of an <u>unlawful interception</u> is required.  The Court also wrote that several of the possibilities of how Dr. Abadir may have obtained the document appear unlikely under the facts here (<u>e.g.</u>, getting it from the accountant), but one cannot fairly eliminate the numerous possibilities of how Dr. Abadir may have obtained the document from a source other than an e-mail.  In any event, the Court did not cite any allegation by the plaintiff, as there were none, and plaintiff will not be able to adduce any evidence here, as there are none, of what is required to be proven, <u>i.e.</u>, that I <u>knew</u> the e-mail was intercepted and I knew or should have known of the specific circumstances of the interception such that I could conclude that I was in possession of <u>unlawfully</u> <u>intercepted</u> material.  Again, it is not enough that Dr. Abadir had "improper access" to plaintiff's documents, that he "illegally obtained" her e-mails, or that he "access[ed]" her account "without authorization."

11

"contemporaneous" acquisition, as the cases require.  It is far more logical, had I thought about it at all, for me to conclude that Dr. Abadir somehow went into plaintiff's e-mail account, by e.g., hacking or by using a password, neither of which would violate the Wiretap Act.

The facts in Garback v. Lossing, 2010 WL 3733971 (E.D. Mich. Sept. 20, 2010), are similar to those here and demonstrates the fallacy of plaintiff's theory.  In Garback, the plaintiff claimed that a settlement of his divorce action was tainted because his wife hired others to obtain his e-mails, which her lawyer then used to advance her interests.[5]  In addressing plaintiff's claim against his wife, the court held that there was no interception, but granted leave to replead because the plaintiff suggested that discovery might show that some form of auto-forwarding rule had been put in place.  However, in addressing the case against the defendant's attorney, the court said that the attorney could not be liable because (i) he was not involved in the interception and (ii) even if he used the e-mails (it was alleged that he knew the e-mails were stolen) he did not know the e-mails were intercepted.  The court explained:

> Though the complaint alleges that [the attorney]
> knew the information was 'stolen,' it fails to allege
> that [he] knew the information was obtained
> through an interception that violated § 2511(d).
> The difference is significant.  [Plaintiff] must plead
> that [the attorney] had knowledge or reason to know
> of the interception.  Id. at *5 n.4 (emphasis added;
> citations omitted).

Thus, even where a court was required to assume at the pleading stage that the attorney "knew" that the e-mails were "stolen," Wiretap Act liability would not lie.

---

[5] It must be emphasized that the decision in Garback was rendered on a motion to dismiss pursuant to Rule 12(b) of the FRCP.

12

The law requires that I knew or had reason to know of the circumstances of the interception such that I could recognize its illegality. Plaintiff is required to come forward with evidence that I <u>knew</u> that Dr. Abadir had set an auto-forward rule on his wife's e-mail account. The most plaintiff is able to show is that Dr. Abadir had somehow obtained, nearly a year later, his wife's tax return and related documentation. Other than my mere receipt of the e-mails, there is no evidence that I had knowledge of how Dr. Abadir obtained the e-mail, and no ability to determine whether there had been unlawful interception.[6]

Extensive research has failed to uncover a single case where liability has been found under circumstances even remotely similar to the facts now before this Court. To the contrary, in virtually all reported use or disclosure decisions, the third party <u>knew</u> there was an interception (which is not true here), and the question was whether he knew or should have known that the interception was unlawful (which most certainly is not true here). <u>See, e.g.</u>, <u>Weeks v. Union Camp Corp.</u>, 215 F.3d 1323, 1505 (4th Cir. 2000) (summary judgment properly granted even where defendant listened to secretly recorded meeting since it would have been "speculative guesswork [for him to know] that the recording was unlawful"); <u>Wulliger</u>, <u>supra</u>, (reversing Wiretap Act conviction of attorney who knowingly used recordings his client had made of his wife where issue was whether he knew recordings violated the Act); <u>McCann v. Iroquois Memorial Hospital</u>, 622 F.3d 745, 753 (7th Cir. 2010) (CEO had no reason to know secret recording of employees was an unlawful interception); <u>Babb v. Eagleton</u>, 614 F. Supp. 2d 1232 at 1245 ("Father simply does not have sufficient evidence to raise an inference or create a

---

[6] This Court is aware that I am technologically challenged. It is extreme to suggest that I understood how an e-mail could be unlawfully obtained and beyond comprehension that I knew (or even understood) the concept of "intercepting" an e-mail while in flight.

triable question of fact as to whether [the attorney]…was aware of the circumstances of the interception such that she could determine that the interception was prohibited in light of Title III."); <u>Mayes v. Lin Television of Texas, Inc.</u>, 1998 WL 665088 (N.D. Tex. Sept. 22, 1998) (granting television station summary judgment on Wiretap Act claim even though reporter was told by politician that she believed tape of her that station was broadcasting was illegally made, since station was not "aware of factual circumstances regarding the origin of the tape that would violate the federal wiretap act statute").

     Finally, I refer to Dr. Abadir's motion for summary judgment. Of course, if he is correct that there is no underlying Wiretap Act violation, then there could be no use or disclosure liability as against me. But even if there were a violation, the ambiguities in the law that he points out make it even less likely that I would have known that there was an unlawful interception. <u>Wulliger</u>, 981 F.2d at 1509 (it is an element of offense that defendant knew that interception was in violation of the Act).

## <u>CONCLUSION</u>

     Extensive discovery has failed to buttress plaintiff's case against me. At the end of the day, she is still left with a single e-mail from which she seeks to draw such a long series of inferences that can only be described as conjecture or surmise. Sheer speculation about what I knew or should have known about how Dr. Abadir may have obtained the e-mail does not substitute for the facts necessary to survive a summary judgment motion. In any event, were the

Court to indulge that speculation, it could not fairly distinguish between my knowing of a possible SCA violation versus a possible Wiretap Act violation. That alone is fatal to plaintiff's case.

Dated:   New York, New York
         November 22, 2013

LARRY M. CARLIN, ESQ.
E-mail: lmcarlinlaw@msn.com
Larry M. Carlin, Esq.
437 Madison Avenue, 35th Floor
New York, New York  10022
Telephone:  (212) 622-7180
Fax:  (212) 754-2508

*Pro Se*

15