UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
ANNABELLE ZARATZIAN,

        Plaintiff,

    v.

ADEL RAMSEY ABADIR, and LARRY M. CARLIN,      10-CIV-09049 (VLB)

        Defendants.

------------------------------------X

## MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT ADEL RAMSEY ABADIR'S MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

**Ballard Spahr Stillman & Friedman LLP**
**425 Park Avenue**
**New York, NY 10022**
**(212) 223-0200**

*Attorneys for Defendant Adel Ramsey Abadir*

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ................................................................................................. ii

ARGUMENT ........................................................................................................................ 1

POINT I      THE COURT SHOULD GRANT SUMMARY
JUDGMENT ON THE WIRETAP ACT AND STORED
COMMUNICATIONS ACT CLAIMS ................................................................ 1

         A.      Consent ................................................................................................ 2

                 i.      Plaintiff Consented By Sharing Her Password .................... 2

                 ii.      There was no "Implied Withdrawal" of Consent ............... 5

         B.      There Was No "Interception" Here ..................................................... 7

         C.      The Statute of Limitations Has Run ................................................. 10

         D.      There was No Stored Communications Act Violation ..................... 12

POINT II      THE COURT SHOULD GRANT SUMMARY JUDGMENT
ON THE CONSTRUCTIVE FRAUD BY FIDUCIARY CLAIM ...................... 12

POINT III      THE COURT SHOULD GRANT SUMMARY JUDGMENT ON
THE REQUESTS FOR INJUNCTIVE RELIEF ................................................ 14

CONCLUSION ................................................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

Connelly v. Wood-Smith, 2012 WL 7809099 (S.D.N.Y. May 14, 2012), report and
 recommendation adopted, 2013 WL 1285168 (S.D.N.Y. March 28, 2013)..............5

Cornerstone Consultants, Inc. v. Prod. Input Solutions, L.L.C.,
 789 F. Supp. 2d 1029 (N.D. Iowa 2011)...........................................................5

Guervich v. Gurevich, 24 Misc. 3d 808 (Kings County. Sup. Ct. 2009)......................7

Hall v. Earthlink Network, Inc., 396 F.3d 500 (2d Cir. 2005).....................................8

Hayes v. New York City Dept. of Corr.,
 84 F.3d 614 (2d Cir.1996)..........................................................................2, 6

In re Doubleclick Inc. Privacy Litig.,
 154 F. Supp. 2d 497 (S.D.N.Y. 2001)...............................................................4

Northeast Gen. Corp. v. Wellington Adver., Inc.,
 82 N.Y.2d 158 (1993) ....................................................................................13

Steve Jackson Games, Inc. v. U.S. Secret Service,
 36 F.3d 457 (5th Cir. 1994) .............................................................................9

United States v. Alter,
 2012 WL 3916513 (N.D. Ind. Sept. 7, 2012) ....................................................3

United States v. Margiotta, 688 F.2d 108 (2d Cir. 1982) ..........................................13

United States v. Morris, 928 F.2d 504 (2d Cir. 1991) ................................................4

United States v. Reed,
 601 F. Supp. 685 (S.D.N.Y.), rev'd on other grounds, 773 F.2d 477 (2d Cir. 1985)..............12

United States v. Steiger, 318 F.3d 1039 (11th Cir. 2003)................................8, 9, 10

Watkins v. L.M. Berry & Co., 704 F.2d 577 (11th Cir. 1983) ....................................4

**OTHER AUTHORITIES**

G.G. Bogert, The Law Of Trusts And Trustees §482 (2013) ....................................12

Jarrod J. White, E-Mail@Work.com: Employer Monitoring of Employee E-Mail, 48 Ala.
 L. Rev. 1079, 1083 (1997)...........................................................................8, 9

Defendant Adel Ramsey Abadir respectfully submits this memorandum of law in further support of his motion for summary judgment and in opposition to Plaintiff's cross-motion for partial summary judgment.

## ARGUMENT

### POINT I

### THE COURT SHOULD GRANT SUMMARY JUDGMENT ON THE WIRETAP ACT AND STORED COMMUNICATIONS ACT CLAIMS

Plaintiff's motion papers largely avoid joining issue on the critical questions before this Court. For example, we observed several times in our opening brief that we have located no case in which liability has been found on facts remotely similar to those here. That is, where the defendant did not take any surreptitious action (such as installing key-logging software, stealing a password, or hacking into a network), but was initially authorized to access a plaintiff's e-mails and that authorization was (allegedly) withdrawn sub silentio. Plaintiff has not proved us wrong on that score. In fact, she does not discuss the facts of any case in detail, no doubt because none supports her position. And she conveniently ignores the development of the law on consent with regard to shared computers and internet/e-mail accounts, relying instead on a smattering of decades-old phone cases that are easily distinguished.

In a further attempt to sidestep the deficiencies in her claims, Plaintiff disavows her own deposition testimony to create non-existent factual disputes. Several times she relies on her newly-submitted Affirmation and claims that her earlier testimony was untruthful. For example, our Statement 5 of Undisputed Facts asserted as follows: "From the time Dr. Abadir initially set up Plaintiff's e-mail account until the couple separated in 2005, she never told him he was not allowed to access her e-mail account. (Zaratzian Depo. at 33 ln. 20 to 34 ln. 9)" Relying on her recent Affirmation, Plaintiff responds as follows: "Plaintiff does not agree that

the fact is accurate. Plaintiff acknowledges that she responded as such in her deposition." (Plaintiff's Response to Defendant Abadir's Statement of Undisputed Facts, ¶ 5)  This she cannot do.  See Hayes v. New York City Dept. of Corr., 84 F.3d 614, 619 (2d Cir.1996)("a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony").

That Plaintiff ignores what she cannot rebut is most plain when it comes to her cause of action under the Stored Communications Act ("SCA").  It is one of the two federal claims in the Complaint, and it was at the crux of Judge Motz's order denying Dr. Abadir's motion to dismiss.  (See Motz Op. 5/5/11, Dkt. No. 25 (declining to dismiss Wiretap Act and state law claims where SCA violation was properly pled, since scope of discovery would largely be the same))  Nevertheless, Plaintiff does not address our motion for summary judgment as to the SCA claim.  She evidently recognizes that the claim is both factually and legally deficient and has thus abandoned it.

The remaining Wiretap Act claim is also deficient and should be dismissed.  As we discuss below, Plaintiff has failed to rebut our demonstration of consent; she relies on unpersuasive cases on the issue of interception; and her answer to our statute of limitations point turns on assertions she makes in her Affirmation in direct contradiction to her own deposition testimony.

A.   Consent

   i.   Plaintiff Consented By Sharing Her Password

In our opening brief, we demonstrated that sharing a password is the sine qua non of giving consent to access one's e-mail account.  Plaintiff ignores the numerous cases we cite that support that proposition.  Instead, she defines consent so narrowly -- she says that it requires

2

specific consent to set the auto-forward instruction -- such that virtually no one could pass her test. See Plaintiff's Br. at 2. Neither the law, nor logic, supports this position.

The general rule, as Plaintiff acknowledges, is that "'consent inheres where a person's behavior manifests acquiescence <u>or a comparable voluntary diminution of his or her otherwise protected rights</u>.'" Id. (quoting <u>United States v. Garcia-Rosa</u>, 876 F.2d 209, 217-18 (1st Cir. 1989)). By sharing her password, Plaintiff granted Dr. Abadir full access to her incoming e-mail (the subject of the auto-forwarding rule) <u>and</u> to her outgoing e-mail, in addition to her internet account and its settings. As a result, Plaintiff voluntarily limited her computer privacy rights. She gave Dr. Abadir the "key" to her e-mail account, and thus she cannot complain that he might have read some of her correspondence.

The cases in our opening brief underscore that Plaintiff's narrow definition of consent is wrong. The law has uniformly developed such that consent turns on whether one has established "a password that the other user does not know." <u>United States v. Alter</u>, 2012 WL 3916513, at *7 (N.D. Ind. Sept. 7, 2012). We are not aware of any authority supporting the view that consent under the Wiretap Act requires not only sharing a password, but also explicit authorization of the specific act complained of, and Plaintiff does not supply any. Were that the standard, consent would rarely if ever be found. For example, in the search cases (where a spouse or roommate allowed the police access to a criminal defendant's computer files or e-mail account), the issue was whether the defendant had shared his password, <u>not</u> whether he had consented to having his files or e-mails turned over to the police. Likewise, in the domestic dispute cases, the issue was whether one spouse had shared her password, <u>not</u> whether she had specifically authorized her partner to download her files or e-mails and provide them to his divorce attorney.

3

Plaintiff's only response is that "[a]ccess and authorization are not synonymous terms under the federal computer misuse statutes." Plaintiff's Br. at 4. She supports this proposition with a law review article that distinguishes between one who lacks authorization and one who exceeds his authorization. Id. at n.14. Our point, however, is that "consent" and "authorization" are sufficiently similar terms such that one could derive guidance from both Wiretap Act and SCA cases. The law supports that conclusion. See In re Doubleclick Inc. Privacy Litigation, 154 F. Supp. 2d 497, 514 (S.D.N.Y. 2001)("In reviewing the case law and legislative histories of Title II [SCA] and the Wiretap Act, we can find no difference in their definition[ ] of . . . 'authorize' (Title II) and 'consent' (Wiretap Act).").

In any event, Plaintiff's claim that Dr. Abadir exceeded his authorization is merely a redux of her unsupported argument that consent requires specific permission to set the auto-forward rule. The only case Plaintiff cites is United States v. Morris, 928 F.2d 504 (2d Cir. 1991), but the facts there are wildly different. Morris was convicted under the Computer Fraud and Abuse Act based on his use of a university computer to plant a "worm" that infiltrated the Internet, causing major damage to various computer systems. Although Morris was authorized to use the computer and certain programs, he "found holes in [the] programs that permitted him a special and unauthorized access route into other computers." Id. at 510 (emphasis added). Moreover, the jury could have concluded that the worm "was designed to gain access to computers at which he had no account by guessing their passwords." Id. (quoting district court; emphasis added). Morris's paradigmatic hacking is a far cry from what happened here, and to suggest that Morris has any bearing here is to seriously misread the case.[1]

---

[1] Plaintiff cites only Watkins v. L.M. Berry & Co., 704 F.2d 577, 582 (11th Cir. 1983), for the proposition that consent "is not necessarily an all or nothing proposition," but may be limited to a specific purpose. Zaratzian Br. at 2. The thirty-year old Watkins case, though, does not

4

Finally, Plaintiff does not address our point that, as the owner of the account, Dr. Abadir had Cablevision's permission to read the e-mails because the service had authorized his access. See Cornerstone Consultants, Inc. v. Production Input Solutions, L.L.C., 789 F. Supp. 2d 1029, 1051 (N.D. Iowa 2011)("a 'provider's' authorization would make a 'user's' lack of authorization of no consequence"). She does not cite, much less distinguish, Connelly v. Wood-Smith, 2012 WL 7809099 (S.D.N.Y. May 14, 2012), report and recommendation adopted, 2013 WL 1285168 (S.D.N.Y. March 28, 2013), which supports this proposition. See Abadir Br. at 12-14. Because Cablevision's consent was sufficient to allow Dr. Abadir to access the account, the issue of Plaintiff's consent is moot.

ii.   There was no "Implied Withdrawal" of Consent

Our opening brief showed that Plaintiff's consent was never explicitly withdrawn, a point that she does not dispute. We also demonstrated that the law does not recognize an "implicit withdrawal" under the facts here. Plaintiff responds that we are "correct that there was no implied withdrawal of consent," although this is because, in her view, "[c]onsent to forward Plaintiff's e-mail was never given." Plaintiff's Br. at 12. But if consent were the only issue, as Plaintiff suggests, then Dr. Abadir should prevail: by sharing her password with Dr. Abadir, she consented to his accessing her e-mails.

---

involve computers or the internet, and thus does not speak to the issue of shared passwords or the like. It involved an employee who was told that her work calls could be monitored by the company, but that her "personal calls [would] not be monitored" except to the extent necessary to determine whether it was personal or business in nature. Id. at 579. The employee sued under the Wiretap Act, claiming that her boss monitored one of her personal calls. The Court denied a motion for summary judgment, holding that Plaintiff's consent was specifically circumscribed to business calls and that "she did not consent to a policy of general monitoring." Id. at 581 (emphasis in original). Here, by contrast, Plaintiff shared her password with her husband, giving him unlimited access to her e-mails, as the many cases we cited in our opening brief make clear.

5

Plaintiff claims for the first time in her new Affirmation, however, that at some point between 2003 and November 2005 she changed the initial password set by Dr. Abadir to "karate." (See Plaintiff's Response to Defendant Abadir's Statement of Undisputed Facts ¶ 2) She now says that she "always assumed" that "karate" "was the only one [she] ever used" until November 2005, and that she does not "recall ever sharing this password with him." (Zaratzian Aff. ¶¶ 8-9) The suggestion is that Plaintiff changed her password <u>while the parties were married</u> and that Dr. Abadir would thus have recognized that he was no longer allowed to read her e-mails.

In Plaintiff's deposition, however, she never mentioned the word "karate", and certainly never suggested that it was her password. To the contrary, she acknowledged that when the account was set up she "ha[d] no idea for a password," that her husband "came up with a password" for her, and that he may have known the password as late as September 2005 (when they separated). (Zaratzian Depo. at 25 ln. 16-18) Plaintiff cannot create a disputed issue of material fact by submitting an affirmation that flatly contradicts her deposition testimony. <u>Hayes</u>, 84 F.3d at 619 ("factual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial"). And even if Plaintiff <u>did</u> change the password, as she now claims, she fails to come to grips with a fundamental flaw in her theory: by changing the password, she also prevented Dr. Abadir from disabling the auto-forward rule.

Plaintiff further claims that any consent that may have existed expired as a result of the parties' separation, which created for Dr. Abadir "an ongoing affirmative legal obligation to not intercept her e-mail." Plaintiff's Br. at 11. Again, Plaintiff asks this Court to take her at her word, because she cites no authority to support that proposition. Moreover, she conveniently ignores the only case on point, <u>Guervich v. Gurevich</u>, 24 Misc. 3d 808 (Kings County. Sup. Ct.

6

2009). Guervich, which we discussed in our opening papers, holds that, in New York, "there is no statute that would recognize an 'implied revocation upon service of a divorce action.'" Id. at 813.

Plaintiff also tries to create an issue of fact where none exists with regard to the ownership of the account. As we demonstrated, Dr. Abadir was the Cablevision account holder and thus had a right of access. Plaintiff, without his permission, put the account in her name without disclosing the change to Dr. Abadir, facts that she acknowledges are "undisputed." (Plaintiff's Response to Defendant Abadir's Statement of Undisputed Facts ¶¶ 2, 6-7) Plaintiff now claims that when she changed the account, "no one at Cablevision/Optimum stated or indicated that Defendant Abadir's permission was needed to effectuate the transfer." (Zaratzian Aff. at ¶ 14) It is hard to imagine that one can change an account without permission of the owner, as anyone who has called a service and been asked security questions surely knows. But whether Plaintiff is being truthful on this point is of no moment; what matters is that she never told Dr. Abadir that he no longer owned the account. Surely his right to access the account could not be divested by his wife's unilateral act of transferring the account into her name, particularly if he was never informed of that fact. See Abadir Br. at 13-14.

\*    \*    \*

Plaintiff consented to Dr. Abadir's access to her e-mails by sharing her password with him. That consent was never withdrawn, either explicitly or implicitly. As a result, liability under the Wiretap Act cannot lie, and summary judgment should be granted.

B.    There Was No "Interception" Here

The majority view is that where, as here, an e-mail has reached its destination server any unauthorized access implicates the SCA and not the Wiretap Act. That is, the

7

communication is "stored" and incapable of being "intercepted". Plaintiff relies primarily on three cases from other Circuits to argue in favor of the minority view. See Plaintiff's Br. at 7-10 (citing United States v. Szymuszkiewicz, 622 F.3d 701 (7th Cir. 2010), United States v. Councilman, 418 F.3d 67 (1st Cir. 2005)(en banc), and United States v. Steiger, 318 F.3d 1039, 1051 (11th Cir. 2003)). Notably absent from her brief is any discussion of the language of the Wiretap Act, its definition of "intercept," or the legislative history of the term. Those factors, together with the prevailing case law, demonstrate that the e-mails here were in "storage" -- and not in transmission -- and thus fall outside the purview of the Wiretap Act. See Abadir Br. at 26-28. Moreover, the Second Circuit, in Hall v. Earthlink Network, Inc., 396 F.3d 500, 503 n.1 (2d Cir. 2005), cited with approval those cases that go our way. See Abadir Br. at 23 n.8.

Plaintiff's reliance on Steiger for the proposition that "automatic e-mail re-routing may constitute an interception," Plaintiff's Br. at 10, is particularly curious because that case, properly read, cuts sharply against her. She quotes the following passage from the opinion:

> [T]here is only a narrow window during which an E-Mail interception may occur -- the seconds or mili-seconds before which a newly composed message is saved to any temporary location following a send command. Therefore, unless some type of automatic routing software is used (for example, a duplicate of all of an employee's messages are automatically sent to the employee's boss), interception of E-Mail within the prohibition of [the Wiretap Act] is virtually impossible.

318 F.3d at 1050 (quoting Jarrod J. White, E-Mail@Work.com: Employer Monitoring of Employee E-Mail, 48 Ala. L. Rev. 1079, 1083 (1997)(alterations in Steiger)).

What Steiger is referring to is the re-routing of outgoing e-mail before the e-mail hits a temporary storage point during the course of transmission, not, as here, the re-routing of an incoming e-mail after it reaches the destination server. This is clear when one actually reads the case and its supporting authority. Steiger relied on Steve Jackson Games, Inc. v. U.S. Secret

8

Service, 36 F.3d 457, 458 (5th Cir. 1994), in which the Secret Service seized a bulletin board system computer that contained unread e-mails (the e-mails were stored on the computer until the addressees "called" the system to read them). Although the e-mails had not yet reached their intended recipients, the Fifth Circuit, relying on the Wiretap Act's statutory language, held that there was no "interception" because the e-mails were residing in storage, even if that storage was merely temporary. Id. at 461 (finding "[c]ritical" that definition of "Electronic storage" includes "any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof")(emphasis in original).[2]

      Furthermore, the law review article that Steiger quoted was discussing the "narrowness" of the holding in Steve Jackson Games, and in particular the fact that an e-mail in storage is no longer subject to the Wiretap Act but only to the SCA. See White, supra, at 1083. Thus, Steve Jackson Games, Steiger, and the White article explain that an e-mail can only be intercepted before it is stored at any point during transmission. That scenario is "virtually impossible" since e-mail hits temporary storage "seconds or mili-seconds" after it is sent. The only way it can be intercepted, these authorities explain, is if the e-mail is somehow diverted before it hits that first storage point, as, for example, when an employee's outgoing e-mail is automatically re-routed immediately upon being sent and before it is stored anywhere. Thus, when Steiger and White refer to "an employee's message," it is clear they are referring to an outgoing e-mail that is immediately redirected. There is little doubt that the Steiger Court and

---

[2] See id. at 461 (rejecting plaintiff's "appeal to logic (i.e., to seize something before it is received is to intercept it)" since "the language of the Act controls"; "Understanding the Act requires understanding and applying its many technical terms as defined by the Act, as well as engaging in painstaking, methodical analysis. As appellees note, the issue is not whether E-mail can be 'intercepted'; it can. Instead, at issue is what constitutes an 'intercept.'").

White would conclude that what occurred here was not an interception since the e-mails were re-routed <u>after</u> they had travelled through several temporary storage points.

Finally, Plaintiff ignores the role that the "rule of lenity" should play in resolving this dispute. At the very least, the interception issue is thorny and susceptible to different approaches, some of which might result in liability and some which would not. But the Wiretap Act is a criminal statute, and under the rule of lenity a defendant must be given the benefit of the doubt (even in a civil case). See <u>Carter v. Welles-Bowen Realty, Inc.</u>, 736 F.3d 722, 730 (5th Cir. 2013)("A single law should have one meaning, and the 'lowest common denominator, as it were, must govern' all of its applications")(quoting <u>Clark v. Martinez</u>, 543 U.S. 371, 380 (2005)) Accordingly, while we firmly believe that proper statutory analysis favors our interpretation of the word "interception," any ambiguity should be resolved in Dr. Abadir's favor.

C.	<u>The Statute of Limitations Has Run</u>

Plaintiff testified that she suspected that Dr. Abadir was accessing her e-mails as early as 2007. Despite this, she failed to uncover the auto-forwarding rule -- or even that Dr. Abadir continued to have an active e-mail account -- though a brief call to Cablevision would have cleared up the problem. The gravamen of Plaintiff's response papers is that the Court should not believe what she said in her deposition, but instead should rely on her recent contradictory Affirmation, which was designed to create a factual issue to avoid summary judgment.

Plaintiff testified that there were "[a] lot of things [that] happened that raised [her] suspicion" that Dr. Abadir was improperly reading her e-mail more than two years before she filed the Complaint (Zaratzian Depo. at 101 ln. 5-7), but she repudiates that concession now. Specifically, she seeks to avoid what she said about Dr. Abadir's November 11, 2007 e-mail

10

referring to her number of boyfriends. In her deposition, she conceded that Dr. Abadir's knowledge was so specific that it "meant that he was looking at my e-mails." (Zaratzian Depo. at 112 ln. 13-14) In her Affirmation, however, she now says that the thought never crossed her mind; instead, she merely "suspected that a neighbor, with whom Defendant Abadir had remained friendly after our divorce, was monitoring cars in my driveway or otherwise watching me." (Zaratzian Aff. ¶ 32)

Likewise, Plaintiff testified that in 2008 her daughter quoted an e-mail about her then-boyfriend (calling him an "ADD loser idiot"), leading Plaintiff to conclude that Dr. Abadir had seen the original e-mail. (Zaratzian Depo. at 101 ln. 3-6, 103 ln. 19-24) She seeks to repudiate that concession as well in her recent Affirmation. She now claims that after her deposition she "recalled" that Dr. Abadir had spoken to her boyfriend's estranged wife and thus "it was plausible that the source of the comment was this route." (Zaratzian Aff. ¶ 37)

As set forth above, the law is clear that one cannot contradict one's own deposition testimony to create a disputed issue of material fact. Plaintiff has acknowledged sufficient facts to have put her on inquiry notice more than two years ago that her e-mail privacy was compromised. Clearly, this did not matter much to her, as she did not follow up on her suspicions. This Court should not countenance her attempt to re-write history by submitting a belated affirmation tailored to defeat our summary judgment motion.[3]

---

[3] Plaintiff's protestations about the value she placed on her e-mail privacy also ring hollow. For nearly a year she received "bounce back" error messages referencing Dr. Abadir's e-mail address and yet she did not bother to inquire as to the problem. And she indiscriminately produced in discovery reams of her outgoing e-mails that were never requested (see Zaratzian production Bates-stamped 5851-6116), including numerous attorney-client privileged e-mails that normally would have been withheld.

D.   There was No Stored Communications Act Violation

As noted above, Plaintiff appears to have abandoned her SCA claim, and with good reason, because it is meritless. Most obviously, Dr. Abadir never accessed <u>Plaintiff's</u> account, but used his own user ID and password to access <u>his</u> account. Accordingly, the Court should dismiss this claim as well.

POINT II

THE COURT SHOULD GRANT SUMMARY JUDGMENT
ON THE CONSTRUCTIVE FRAUD BY FIDUCIARY CLAIM

Plaintiff does not address -- let alone refute -- our showing why her "Constructive Fraud by Fiduciary" claim fails: no fiduciary relationship existed between Plaintiff and Dr. Abadir under the circumstances in issue and, in any event, Plaintiff admitted that Dr. Abadir's access to her e-mails did not adversely affect her divorce settlement. <u>See</u> Abadir Br. at 33-35. Instead, Plaintiff offers only generalities from the case law, followed by a conclusory assertion of a fiduciary relationship that ignores the facts. Her position deserves short shrift.

The premise of Plaintiff's claim is that she and Dr. Abadir had a fiduciary relationship when they executed their separation agreement "by virtue of their marital relationship." Plaintiff's Br. at 15; <u>see</u> SAC ¶ 51. However, "[m]ere kinship alone . . . does not itself establish a confidential relationship. Often relatives are hostile to each other or deal at arm's length and act independently and thus are held <u>not</u> to have been in a confidential relationship." G.G. Bogert, <u>The Law Of Trusts And Trustees</u> § 482 (2013). Thus, a husband and wife -- and particularly those who are divorcing -- are not necessarily in a fiduciary relationship due to their marriage. Abadir Br. at 34. Rather, "the existence of a confidential relationship must be determined <u>independently</u> of a preexisting family relationship." <u>United States v. Reed</u>,

601 F. Supp. 685, 706 (S.D.N.Y.)(emphasis added), rev'd on other grounds, 773 F.2d 477 (2d Cir. 1985).

"[A]t the heart of the fiduciary relationship" are "the concepts of reliance, and de facto control and dominance." United States v. Margiotta, 688 F.2d 108, 125 (2d Cir. 1982)(citing cases); accord, Northeast Gen. Corp. v. Wellington Adver., Inc., 82 N.Y.2d 158, 172-73 (1993)("[a] fiduciary relation exists when confidence is reposed on one side and there is resulting superiority and influence on the other"); see Abadir Br. at 33-34. Plaintiff here alleges that Dr. Abadir received her e-mails improperly while the couple was locked in a highly-contentious divorce. As a consequence, it cannot be said that Dr. Abadir was acting for Plaintiff's benefit, that she was under his control and dominance, or that she reasonably could have relied on him with respect to the divorce proceedings (or, for that matter, anything else). Tellingly, her papers refer only to their relationship during the marriage and not during the divorce. Simply put, because Dr. Abadir was not Plaintiff's fiduciary at the relevant time, the claim for fraud by a fiduciary fails.

Likewise, although Plaintiff acknowledges her burden to show that Dr. Abadir's alleged misconduct "directly caus[ed] the loss," she offers no evidence that she suffered in the divorce proceedings. As we showed in our moving papers, Plaintiff admitted at her deposition that she had no proof that Dr. Abadir's access to her e-mail adversely affected the settlement. She could not identify any e-mails he saw that involved the main terms of the divorce, and by her own words could offer only "surmise" and "I don't know" when pressed to give evidence on this score. See Abadir Br. at 34-35. Indeed, her opposition papers are silent on causation, and thus she virtually concedes the evidentiary failure of her allegations. Accordingly, summary judgment is warranted as to this claim as well.

## POINT III

## THE COURT SHOULD GRANT SUMMARY JUDGMENT
## ON THE REQUESTS FOR INJUNCTIVE RELIEF

In Count Six of the SAC, Plaintiff seeks injunctive relief based on the alleged violations of the Wiretap Act and the Stored Communications Act. Because Plaintiff has failed to sustain these claims, Count Six should be dismissed as well.

## CONCLUSION

For the reasons stated above and in our original motion papers, the Court should grant summary judgment and dismiss the Complaint in its entirety.

Dated: New York, New York          BALLARD SPAHR STILLMAN &
January 24, 2014                   FRIEDMAN LLP

                                   By: _____
                                       Nathaniel Z. Marmur
                                       Mary Margulis-Ohnuma
                                       425 Park Avenue
                                       New York, New York 10022
                                       (212) 223-0200
                                       MarmurN@bssfny.com
                                       OhnumaM@bssfny.com

                                   *Attorneys for Defendant Adel Ramsey Abadir*

14