UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
ANNABELLE ZARATZIAN,                        :
               Plaintiff,            :
                               :      **<u>MEMORANDUM DECISION</u>**
v.                                          :
                               :      10 CV 9049 (VB)
ADEL RAMSEY ABADIR and                      :
LARRY M. CARLIN,                            :
               Defendants.          :
-----------------------------------------------------------------x

Briccetti, J.:

       Plaintiff Annabelle Zaratzian commenced this action against defendants Adel Ramsey

Abadir and Larry M. Carlin on December 3, 2010, asserting violations of 18 U.S.C. § 2510 <u>et</u>

<u>seq</u>. (the "Wiretap Act"), 18 U.S.C. § 2701 <u>et</u> <u>seq</u>. (the "Stored Communications Act" or

"SCA"), and for conspiracy to violate those Acts under 42 U.S.C. § 1985(3), as well as state law

claims for violation of New York Penal Law § 250.05 and trespass to chattels.

       On January 31, 2011, Abadir and Carlin moved to dismiss the complaint under Rule

12(b)(6).  (Docs. ##12, 14).  On May 3, 2011, the Honorable J. Frederick Motz, sitting by

designation, denied Abadir's motion, but granted Carlin's motion, holding Zaratzian had not

plausibly pleaded any claims as against Carlin.  (Doc. #21).

       Zaratzian appealed Judge Motz's decision to the Court of Appeals for the Second

Circuit,[1] which granted her motion to stay the appeal because final judgment had not yet been

entered.  This Court granted Zaratzian's motion for entry of final judgment pursuant to Rule

54(b) as to the dismissed defendant, Carlin, and directed the Clerk to enter judgment as to Carlin.

(Doc. #34).  The Court of Appeals lifted the stay.

---

[1]     On June 21, 2011, Zaratzian filed an amended complaint naming Abadir as the sole
defendant.  (Doc. #30-1).

On February 10, 2012, while her appeal was pending, Zaratzian moved under Rule 62.1 for an indicative ruling on her motion under Rule 60(b)(2) seeking relief from the final Judgment entered as to Carlin on the basis of newly discovered evidence.  (Doc. #65).

By Memorandum Decision dated May 30, 2012, the Court granted Zaratzian's motion for an indicative ruling, and stated it would grant Zaratzian's motion to re-open the case against Carlin if the Court of Appeals were to remand for that purpose.  (Doc. #62).  On August 14, 2012, the Court of Appeals did remand the case to this Court.  (Doc. #76).  Accordingly, Zaratzian moved for relief from the Judgment dismissing all claims against Carlin pursuant to Rule 60(b)(2), which the Court granted on August 29, 2012, thereby reinstating Carlin as a defendant.  (Doc. #78).

Zaratzian thereafter filed a second amended complaint ("SAC").  (Doc. #80).  The SAC asserts federal claims against both defendants under the Wiretap Act and the Stored Communications Act and state law claims against Abadir for trespass to chattels, constructive fraud by fiduciary, and violation of New York Penal Law § 250.05.  Zaratzian also seeks injunctive relief under Section 2520(b) of the Wiretap Act and Section 2707(b) of the SCA.

Now pending are Abadir's and Carlin's motions for summary judgment[2] and Zaratzian's motion for partial summary judgment.  (Docs. ##110, 114, and 118).

The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

---

[2]      Although his motion for summary judgment seeks dismissal of the SAC in its entirety, Abadir does not make any arguments specifically addressing Zaratzian's state law claims for trespass to chattels and violation of New York Penal Law § 250.05.

In addition to the arguments Carlin advances in his own motion for summary judgment, he also "fully adopt[s]" those asserted by Abadir.  (See Doc. #116 at 5).

# BACKGROUND

The parties have submitted briefs, statements of facts pursuant to Local Civil Rule 56.1, and exhibits, which reflect the following factual background.

Zaratzian and Abadir married in 1993, separated in 2005, and, following contentious matrimonial litigation, divorced in 2006.  In connection with their divorce, Zaratzian and Abadir entered into a "marital separation agreement," dated December 19, 2006.  (Doc. #126-1).  The post-divorce period was acrimonious, including litigation in the Westchester County Family Court regarding child custody and related issues.

On August 30, 2001—while the couple was still married—Abadir opened a Cablevision "Optimum Online" account for internet and email service.  Because Zaratzian was unfamiliar with computers, on April 10, 2003, Abadir configured an email account for Zaratzian (azaratzian@optonline.net) and set her password.  Abadir thus had access to Zaratzian's email messages and her account settings, including an email-forwarding setting which, if enabled, automatically forwards all incoming email to a designated email address.

Abadir enabled the "auto-forwarding" function at some point before the couple's separation in September 2005, causing all incoming emails sent to Zaratzian at azaratzian@optonline.net to be automatically forwarded to Abadir at his email address, rabadir@optonline.net.  Abadir testified that when he activated the auto-forwarding function, he told Zaratzian he was doing so to avoid missing notifications about their children's extracurricular activities, and that Zaratzian agreed to it.  Zaratzian denies this.  Abadir maintains he discussed the function with Zaratzian at the time he enabled it, but agrees there were no subsequent conversations about it.  When Abadir was asked at his deposition if emails forwarded from Zaratzian's account to his account included electronic communications with third parties, including Zaratzian's attorneys, he conceded they did.

3

Sometime after the couple separated, Zaratzian took over the Cablevision account, and the name associated with the account was changed from Abadir's to Zaratzian's on November 14, 2005. (See Doc. #111-5). Several years later, on June 4, 2009, Zaratzian called Cablevision and, upon learning Abadir's email account was still being maintained, instructed Cablevision to close Abadir's account. The account was deactivated that day. Abadir thus received copies of Zaratzian's incoming emails until Zaratzian instructed Cablevision to close Abadir's email account on June 4, 2009.

Because Abadir's account was no longer active, Zaratzian began receiving error messages stating "Delivery Notification: Delivery has failed." She dismissed these messages as "spam" until she examined a series of them on June 27, 2010, and observed the error messages related to Abadir's email address. Zaratzian again contacted Cablevision and learned her email account had been set to automatically forward her incoming emails to rabadir@optonline.net.

One of the emails automatically forwarded to Abadir was a June 3, 2009, email from Zaratzian's accountant with Zaratzian's 2008 federal and state income tax returns attached. On May 18, 2010, Abadir sent his divorce attorney, defendant Larry M. Carlin, an email with Zaratzian's 2008 tax returns attached. The email's subject line was "Annabelle 2008 RETURN & AUTHORIZATION FORM," and the body of the email contained the message "Enclosed are materials that may be useful. Ramsey." (Doc. #116-1).

In October 2010, during a Family Court proceeding relating to the parties' respective finances, Carlin claimed Zaratzian earned $400,000 per year. Zaratzian argues this statement was based on information gleaned from her 2008 tax returns, which Abadir surreptitiously acquired in June 2009 via the email auto-forwarding function.

Carlin testified he only learned Abadir had been receiving copies of Zaratzian's emails in December 2010 when he was served with Zaratzian's original complaint in this action.  Zaratzian contends she has submitted evidence of other incidents showing Carlin knew or had reason to know about the auto-forwarding.

**DISCUSSION**

I.      Legal Standard

The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

A fact is material when it "might affect the outcome of the suit under the governing law. . . .  Factual disputes that are irrelevant or unnecessary" are not material and thus cannot preclude summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A dispute about a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party.  See id.  The Court "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried."  Wilson v. Nw. Mut. Ins. Co., 625 F.3d 54, 60 (2d Cir. 2010) (citation omitted).  It is the moving party's burden to establish the absence of any genuine issue of material fact.  Zalaski v. City of Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010).

If the non-moving party has failed to make a sufficient showing on an essential element of his case on which he has the burden of proof, then summary judgment is appropriate.  Celotex Corp. v. Catrett, 477 U.S. at 323.  If the non-moving party submits "merely colorable" evidence, summary judgment may be granted.  Anderson v. Liberty Lobby, Inc., 477 U.S. at 249-50.  The

non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011) (internal citations omitted).  The mere existence of a scintilla of evidence in support of the non-moving party's position is likewise insufficient; there must be evidence on which the jury could reasonably find for him. Dawson v. Cnty. of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

In deciding a summary judgment motion, the Court construes the facts, resolves all ambiguities, and draws all permissible factual inferences in favor of the non-moving party. Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003).  If there is any evidence from which a reasonable inference could be drawn in favor of the non-moving party on the issue on which summary judgment is sought, summary judgment is improper.  See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc., 391 F.3d 77, 83 (2d Cir. 2004).

II.    Statutes of Limitations

Defendants argue Zaratzian's Wiretap Act and Stored Communications Act claims, brought on December 3, 2010, are barred by the statutes of limitations in those Acts.

Under the Wiretap Act, a civil action "may not be commenced later than two years after the date upon which the claimant first has a reasonable opportunity to discover the violation." 18 U.S.C. § 2520(e).  "In other words, the [Wiretap Act] bars a suit if the plaintiff had such notice as would lead a reasonable person either to sue or to launch an investigation that would likely uncover the requisite facts."  Sparshott v. Feld Entm't, Inc., 311 F.3d 425, 429 (D.C. Cir. 2002); accord Lanier v. Bryant, 332 F.3d 999, 1004 (6th Cir. 2003).  Actual knowledge of the violation is not required.  Davis v. Zirkelbach, 149 F.3d 614, 618 (7th Cir. 1998) (Section

2520(e) "does not require the claimant to have actual knowledge of the violation; it demands only that the claimant have had a reasonable opportunity to discover it.").

Likewise, "[a] civil action under [the SCA] may not be commenced later than two years after the date upon which the claimant first discovered or had a reasonable opportunity to discover the violation."  18 U.S.C. § 2707(f); see also Maddalena v. Toole, 2013 WL 5491869, at *4 (C.D. Cal. Oct. 1, 2013) (holding the limitations provision of the SCA "do[es] not require that the claimant have actual knowledge of the violation . . . only . . . reasonable notice").

Defendants have the burden to show the absence of a genuine issue of fact as to the untimeliness of Zaratzian's claims.  See Lanier v. Bryant, 332 F.3d at 1003 (citing Celotex Corp. v. Catrett, 477 U.S. at 323); see also Sweeten v. Middle Twp., 2007 WL 4440936, at *7 (D.N.J. Dec. 14, 2007) ("Where a defendant raises a section 2520(e) defense in the context of a summary judgment motion, it bears the burden of establishing that 'no reasonable jury could [find that the plaintiff] did not have a reasonable opportunity to discover [the violation] more than two years before the start of the lawsuit.'" (quoting Sparshott v. Feld Entm't, Inc., 311 F.3d at 429)).

Here, defendants argue two "red flags" put Zaratzian on notice of the alleged violation. First, in a November 11, 2007 email, Abadir told Zaratzian: "At my last count the kids have been exposed to 3 of your significant others in the last several months."  (Doc. #111-6).  Defendants contend this put Zaratzian on notice that Abadir was intercepting her emails, because Zaratzian knew her children had not met (and did not know) the men she had dated, and because Zaratzian had only communicated the fact that she dated three men over email.  Second, in the summer or fall of 2008, Zaratzian and Abadir's daughter relayed to Zaratzian a conversation in which Abadir used a distinctive phrase ("ADD loser idiot") to describe Zaratzian's then-boyfriend

Harold Burke.  Defendants urge this, too, put Zaratzian on notice because in early 2008, Burke forwarded to Zaratzian an email from Burke's ex-wife describing Burke with the same phrase.

Zaratzian concedes these communications occurred but contends the significance of the communications at the time is in dispute.

The Court cannot, as a matter of law, conclude that these two incidents would alert a reasonable person to the alleged violation.  Accordingly, whether and when Zaratzian had a reasonable opportunity to discover the violation is a question of fact for the jury.  See, e.g., Brown v. Am. Broad. Co., Inc., 704 F.2d 1296, 1304 (4th Cir. 1983) (holding in Wiretap Act case that "the issue of when plaintiff knew, or reasonably should have known of the existence of her cause of action, is a question to be resolved by a jury").

Defendants also argue Zaratzian's testimony that she suspected Abadir was reading her emails more than two years before she commenced this action shows Zaratzian had inquiry notice of the alleged violations.  Zaratzian's testimony about her own suspicions is irrelevant, however, as the standard is objective.  See Sparshott v. Feld Entm't, Inc., 311 F.3d at 429 ("[The plaintiff's] subjective state of mind is irrelevant.").[3]  The question is whether, objectively, the two incidents submitted by defendants gave Zaratzian the kind of notice that "would lead a reasonable person either to sue or to launch an investigation that would likely uncover the requisite facts."  Id.  The Court concludes this is in dispute.

Accordingly, defendants' motions for summary judgment on the Wiretap Act and SCA claims based on the statutes of limitations are denied.

---

[3]     Moreover, Zaratzian's testimony is not nearly as clear on this point as defendants suggest.  For example, Zaratzian also testified she "didn't understand how [Abadir] knew all these little things about me that he shouldn't have known," and she also had speculated her neighbors might be spying on and/or watching her.  (Doc. #111-1 at 33-34).  Zaratzian further testified that it was only "in hindsight"—that is, with the benefit of more information—that these incidents led her to conclude Abadir was reading her email.  (Id. at p. 34).

III.    The Wiretap Act

Zaratzian asserts claims against Abadir and Carlin under the Wiretap Act.  "Through the enactment of [the Electronic Communications Privacy Act ("ECPA")], Congress amended the Federal wiretap law in order to 'update and clarify Federal privacy protections and standards in light of dramatic changes in new computer and telecommunications technologies.'"  Hall v. EarthLink Network, Inc., 396 F.3d 500, 503 (2d Cir. 2005) (quoting Sen. Rep. No. 99–541, at 1 (1986), reprinted in 1986 U.S.C.C.A.N. 3555, 3555).[4]  Subject to certain exceptions, anyone who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication" has violated the Wiretap Act. 18 U.S.C. § 2511(1)(a); see also id. § 2520 (providing private right of action).

Zaratzian asserts claims against Abadir for intercepting her email communications under Section 2511(1)(a), and for disclosing and using the contents of the allegedly intercepted communications under Sections 2511(1)(c) and 2511(1)(d), respectively.  Under the Wiretap Act, it is also unlawful intentionally to disclose or use, or endeavor to disclose or use, "the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of [Section 2511]."  18 U.S.C. §§ 2511(1)(c), 2511(1)(d).

Zaratzian also asserts claims against Carlin for disclosing and using the contents of the allegedly intercepted communications under Sections 2511(1)(c) and 2511(1)(d).

---

[4]     "ECPA is divided into Title I, which governs unauthorized interception of electronic communications, 18 U.S.C. §§ 2510-2522 [the Wiretap Act], and Title II, which governs unauthorized access to stored communications, 18 U.S.C. §§ 2701-2711 [the Stored Communications Act]."  Id.

A.    Interception

Defendants argue Zaratzian's Wiretap Act claims should be dismissed because the automatic forwarding of emails does not constitute an interception under the Act.

"Intercept" is defined by the Act as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device."  18 U.S.C. § 2510(4).  "[E]lectronic communication means any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce."  Id. § 2510(12) (internal quotation marks omitted).

Although no such requirement appears explicitly in the Act, several circuit courts of appeals have concluded on the basis of statutory interpretation and legislative history that an interception of an electronic communication must be "contemporaneous" with the transmission of the communication to violate Section 2511.  See Fraser v. Nationwide Mut. Ins. Co., 352 F.3d 107, 110, 113-14 (3d Cir. 2003) (employer's search of employee's email stored on central file server not interception because not contemporaneous with transmission); United States v. Steiger, 318 F.3d 1039, 1047-50 (11th Cir. 2003) (use of  "Trojan Horse" computer virus "to access and download information stored on [a] personal computer" not interception because not contemporaneous with transmission); Konop v. Hawaiian Airlines, Inc., 302 F.3d 868, 878-79 (9th Cir. 2002) (access of secure website not interception because not contemporaneous with transmission); Steve Jackson Games, Inc. v. U.S. Secret Serv., 36 F.3d 457, 460-62 (5th Cir. 1994) ("seizure of a computer on which is stored private [e]mail that has been sent to an electronic bulletin board, but not yet read (retrieved) by the recipients" not interception because not contemporaneous with transmission).

At least two courts in this District have adopted this "narrow" definition of "intercept." Snyder v. Fantasy Interactive, Inc., 2012 WL 569185, at *2 (S.D.N.Y. Feb. 9, 2012) ("While the Second Circuit has not addressed this issue, the Fifth Circuit's reason for maintaining the narrow definition is sound, and this Court adopts it." (internal citations omitted)); Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC, 759 F. Supp. 2d 417, 430 (S.D.N.Y. 2010) (order on summary judgment); Pure Power Boot Camp v. Warrior Fitness Boot Camp, 587 F. Supp. 2d 548, 557-58 (S.D.N.Y. 2008) (order on motion to preclude use of emails as evidence).

Assuming, without deciding, that an interception must be contemporaneous with the communication to violate the Wiretap Act, the Court concludes the interception at issue here— the auto-forwarding of emails received by Zaratzian's email account to Abadir's email account— satisfies that standard.

In United States v. Szymuszkiewicz, the Seventh Circuit addressed substantially the same issue before the Court—whether a Microsoft Outlook rule "that directed Outlook to forward to [the defendant] all messages [his supervisor] received" was a contemporaneous interception under the Wiretap Act.  622 F.3d 701, 703 (7th Cir. 2010).  The Seventh Circuit held it was contemporaneous, rejecting the defendant's attempt to analogize an individual intercepting electronic communications to a football player "catching a thing in flight," id. at 705-06—the same analogy offered by defendants here.  The Seventh Circuit held the defendant's analogy was inapt because "contemporaneous" does not mean "in the middle," and "for email there is no single 'thing' that flies straight from sender to recipient."  Id.  Rather, "[t]here are only packets, segments of a message that take different routes at different times."  Id. at 705.  The court reasoned:

> Either the server in Kansas City or [the defendant's supervisor's] computer made copies of the messages for [the defendant] within a

> second of each message's arrival and assembly; if both [the defendant] and [the defendant's supervisor] were sitting at their computers at the same time, they would have received each message with no more than an eyeblink in between.   <u>That's contemporaneous by any standard.</u>   Even if [the defendant's supervisor's] computer (rather than the server) was doing the duplication and forwarding, it was effectively acting as just another router, sending packets along to their destination.

<u>Id</u>. at 706 (emphasis added).

The Court agrees with the Seventh Circuit's commonsense application of the contemporaneity requirement in a case with materially identical facts.  Here, too, whether it was the server or Zaratzian's computer that made the copies that were transmitted to Abadir,[5] those copies were made "within a second of each message's arrival and assembly," and if both Zaratzian and Abadir were at their computers in the same moment, they each would have received the message "with no more than an eyeblink in between."  <u>Id</u>.; <u>see also</u> Doc. #136 (Abadir's Resp. to Pl.'s Statement of Undisputed Facts) ¶¶ 72-75.  The Court therefore concludes the automatic forwarding in question constitutes a contemporaneous interception of electronic communications under the Wiretap Act.[6]

Defendants contend the Second Circuit has cited <u>Steve Jackson Games, Inc. v. U.S. Secret Serv.</u>, 36 F.3d 457 (5th Cir. 1994), and the cases following it "with approval, thereby endorsing the prevailing line of cases differentiating electronic communications 'in transit' (and therefore subject to interception under the Wiretap Act) from those 'in storage' (which are not)." (Doc. #113 at 31 n.8 (citing <u>Hall v. EarthLink Network, Inc.</u>, 396 F.3d 500 (2d Cir. 2005))).

---

[5]     It appears to be undisputed that the copying was done by an application called a "mail transfer agent" on the Optimum Online server.

[6]     Defendants characterize <u>Szymuszkiewicz</u> as the "minority view."  In <u>Szymuszkiewicz</u>, however, the Seventh Circuit did not reject the contemporaneity rule advanced by the other circuit courts of appeals.  It held the automatic forwarding of emails at issue <u>was</u> contemporaneous.  <u>United States v. Szymuszkiewicz</u>, 622 F.3d at 705-06.  Therefore, it does not represent a "minority view."  In any event, defendants make no attempt to distinguish its facts.

First, the Court rejects defendants' reading of the dicta in <u>Hall</u>, a case involving the continued receipt and storage of email messages by EarthLink (an internet service provider) after EarthLink terminated the plaintiff's account.  In <u>Hall</u>, the Second Circuit disposed of EarthLink's alternative arguments—specifically, that "communication over the Internet can only be electronic communication while it is in transit, not while it is in electronic storage," and "an 'interception' can only occur when messages are in transit."  <u>Hall v. EarthLink Network, Inc.</u>, 396 F.3d at 503 n.1.  Without explicitly addressing the merits of the <u>Steve Jackson Games</u> cases, the Second Circuit distinguished them, thereby rejecting EarthLink's alternative arguments and concluding that unlike those cases, the case before it involved "the <u>continued</u> <u>receipt</u> of e-mail messages rather than the acquisition of <u>previously</u> <u>stored</u> electronic communication."  <u>Id.</u>[7]

Second, if anything, the dicta in <u>Hall</u> undermines defendants' position, as the interception here strikes the Court as more similar to the "continued receipt of e-mail messages" in <u>Hall</u> than "the acquisition of previously stored electronic communication" in the <u>Steve Jackson Games</u> cases.  <u>See</u> <u>id.</u> at 503 n.1; <u>see</u> <u>also</u> <u>Pure Power Boot Camp v. Warrior Fitness Boot Camp</u>, 587 F. Supp. 2d 548, 556 (S.D.N.Y. 2008) (observing the Second Circuit in <u>Hall</u> "was unpersuaded by the defendant's argument that an interception . . . can only occur when messages are in transit, but did not elaborate further." (internal quotation marks omitted)).

In any event, because the automatic email forwarding here <u>was</u> contemporaneous with communication, it constitutes interception even under the so-called "narrow" standard applied in the <u>Steve Jackson Games</u> cases.[8]

---

[7]     The Second Circuit went on to hold that an exception for electronic communications intercepted in the "ordinary course of business" applied, thus concluding on the basis of that exception that EarthLink's receipt of emails did not constitute an interception.  <u>Id.</u> at 504-05.

[8]     Defendants urge the Court to apply the "rule of lenity," a canon of statutory interpretation, to resolve "any remaining ambiguity" in their favor. "The rule of lenity is a rule of

Accordingly, Zaratzian's partial motion for summary judgment is granted on the narrow issue of whether an interception of an electronic communication occurred.  See 18 U.S.C. §§ 2510(4), 2510(12), and 2511(1)(a).[9]

B.    Consent

Defendants further argue Zaratzian consented to the interception of her email by "allow[ing] her husband to establish her e-mail account and set her password, . . . thus grant[ing] him wholesale authorization to access her account as he saw fit."  (Doc. #113 at 20).

Under the Wiretap Act, an interception of an electronic communication is not unlawful when "one of the parties to the communication has given prior consent to such interception."  18 U.S.C. § 2511(2)(d).  "Such consent may be express or implied."  United States v. Willoughby, 860 F.2d 15, 19 (2d Cir. 1988).  "[I]mplied consent is 'consent in fact[,]' which is inferred 'from surrounding circumstances indicating that the [party] knowingly agreed to the surveillance.'"  Griggs-Ryan v. Smith, 904 F.2d 112, 116-17 (1st Cir. 1990) (quoting United States v. Amen, 831 F.2d 373, 378 (2d Cir. 1987)); see also Berry v. Funk, 146 F.3d 1003, 1011 (D.C. Cir. 1998) ("Without actual notice, consent can only be implied when "[t]he surrounding circumstances . . . convincingly show that the party knew about and consented to the interception.").  "[T]he parameters of consent may be circumscribed depending on the subtleties and permutations inherent in a particular set of facts[, and] a reviewing court must inquire into the dimensions of

_____

last resort, [applied] only when none of the other canons of statutory interpretation is capable of resolving the statute's meaning."  Adams v. Holder, 692 F.3d 91, 107 (2d Cir. 2012) (internal quotation marks omitted).  Because the meaning of the applicable provisions of the Wiretap Act are capable of being resolved, the rule of lenity is not applicable.  See id.  Regardless, even assuming arguendo, as the Court has, that the "narrow" definition of interception applied in the Steve Jackson Games cases is correct, the automatic email forwarding here nevertheless constitutes interception for the reasons stated above.

[9]    This ruling has no effect on the Court's determinations that issues of fact remain regarding (i) whether and when Zaratzian had a reasonable opportunity to discover the interception, and (ii) the scope of Zaratzian's implied consent to the interception (see infra).

the consent and then ascertain whether the interception exceeded those boundaries." Griggs-Ryan v. Smith, 904 F.2d at 119.  Defendants bear the burden of demonstrating the consent exception applies.  See In re Pharmatrak, Inc., 329 F.3d 9, 19 (1st Cir. 2003).

It is not genuinely disputed that Zaratzian permitted Abadir to open an Optimum Online email account for her, configure that account, and set her initial password.[10]  Zaratzian does, however, dispute the scope of that initial consent.

The Court agrees with Zaratzian that the scope of her consent is an issue of fact.  See, e.g., In re Pharmatrak, Inc., 329 F.3d at 19 ("A party may consent to the interception of only part of a communication or to the interception of only a subset of its communications."); Watkins v. L.M. Berry & Co., 704 F.2d 577, 581-82 (11th Cir. 1983) ("[K]nowledge of the capability of monitoring alone cannot be considered implied consent. . . . It is the task of the trier of fact to determine the scope of the consent and to decide whether and to what extent the interception exceeded that consent."); In re Google Inc. Gmail Litig., 2014 WL 1102660, at *16 (N.D. Cal. Mar. 18, 2014) ("Implied consent is an intensely factual question that requires consideration of the circumstances surrounding the interception to divine whether the party whose communication was intercepted was on notice that the communication would be intercepted.").

The issue is not whether Zaratzian ever impliedly "revoked" her consent, as defendants assert, but, rather, the scope of Zaratzian's consent and whether the interception here exceeded

_____

[10]     In Zaratzian's Response to Abadir's Statement of Undisputed Facts, Zaratzian denies Abadir "had access to a password utilized by her" and states she does not recall whether Abadir came up with the first password on her email account or a subsequent password, citing her affidavit.  (Doc. #127 at 2).  Zaratzian testified at her deposition, however, that Abadir "came up with" her initial password, and Zaratzian, on summary judgment, may not undermine that deposition testimony with an affidavit.  Hayes v. N.Y.C. Dep't of Corr., 84 F.3d 614, 619 (2d Cir. 1996) ("[A] party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony.").  The Court therefore treats this fact as undisputed for purposes of these motions.

that consent.  The Court is not persuaded the permission Zaratzian gave Abadir to set up her

email account and choose a password for her constitutes "wholesale" consent to Abadir reading

her personal emails in perpetuity, as a matter of law.  Therefore, defendants have not shown the

absence of a genuine issue of material fact regarding Zaratzian's consent to the interception.  See

Zalaski v. City of Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010).[11]

Defendants also argue that because Abadir owned the Cablevision account at the time the

auto-forwarding was activated, Cablevision "authorized" him to access Zaratzian's email, and

therefore Zaratzian's consent was not required.  This argument is baseless.  First, both of the

cases defendants cite for this proposition were decided on the basis of interpretations of specific

statutory language that is unique to the SCA—specifically, the exception for "conduct authorized

. . . by the person or entity providing a wire or electronic communications service."  18 U.S.C.

§ 2701(c).  See Connolly v. Wood-Smith, 2012 WL 7809099, at *12 (S.D.N.Y. May 14, 2012),

report and recommendation adopted as modified by, 2013 WL 1285168 (S.D.N.Y. Mar. 28,

2013); Cornerstone Consultants, Inc. v. Production Input Solutions, L.L.C., 789 F. Supp. 2d

1029, 1048 (N.D. Iowa 2011).  Because the consent exception in the Wiretap Act does not

contain this language, these cases have no weight.

Moreover, both cases involved professional email accounts and are thus factually

inapposite.  Zaratzian had a reasonable expectation of privacy in her personal email, regardless

of whether her husband's name was technically the name on the Cablevision account.  To hold

otherwise would lead to a perverse outcome in conflict with basic notions of privacy.  Cf.

Watkins v. L.M. Berry & Co., 704 F.2d at 581 ("Consent under [T]itle III is not to be cavalierly

---

[11]     Whether Zaratzian consented to Abadir's setting of the auto-forwarding function, itself, is
also plainly in dispute.

implied.  Title III expresses a strong purpose to protect individual privacy by strictly limiting the occasions on which interception may lawfully take place.").

Accordingly, the Court concludes the scope of Zaratzian's consent is a genuine issue of material fact.[12]

Abadir's motion for summary judgment on Zaratzian's Wiretap Act claims and Zaratzian's motion for partial summary judgment on the issue of consent are therefore both denied.

C.      Carlin

Zaratzian asserts claims against Carlin for disclosing and using the contents of the intercepted June 3, 2009, email under Sections 2511(1)(c) and 2511(1)(d) of the Wiretap Act. Specifically, Zaratzian alleges Carlin disclosed and used Zaratzian's 2008 tax returns—which Abadir emailed to Carlin on May 18, 2010—by revealing information regarding Zaratzian's income derived from the returns at a Family Court proceeding in October 2010.

Carlin moves for summary judgment on these claims on the additional basis of Zaratzian's failure to show Carlin knew or should have known the tax returns Abadir emailed

---

[12]      The Second Circuit's decision in Anonymous v. Anonymous, 558 F.2d 677 (2d Cir. 1977), does not require dismissal of Zaratzian's Wiretap Act claims, as defendants urge.  In that case, the Second Circuit distinguished the fact pattern before it—a husband taping telephone conversations on his home phone between his daughter, who lived with him, and his wife—from fact patterns in cases from other circuits involving invasions of privacy of "innumerable persons, known and unknown[, which] removed those . . . cases from the province of mere domestic conflicts." Id. at 679.  Here, as in the cases the Second Circuit distinguished, the automatic email forwarding employed by Abadir not only invaded Zaratzian's privacy—it invaded the privacy of all those who emailed Zaratzian while the forwarding function was activated.  Moreover, the Second Circuit explicitly limited Anonymous to the facts it presented.  See id. ("[N]or do we suggest that a plaintiff could never recover damages from his or her spouse under the federal wiretap statute. We merely hold that the facts of this case do not rise to the level of a violation of that statute.").  Accordingly, Anonymous does not bar Zaratzian's claims.

him in 2010 were the product of Abadir's interception of Zaratzian's emails in violation of the Wiretap Act.

Under Sections 2511(1)(c) and 2511(1)(d), it is illegal intentionally to use or disclose the contents of intercepted communications, "knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of [Section 2511]."  18 U.S.C. §§ 2511(1)(c), 2511(1)(d).  Accordingly, "[t]o be liable under § 2511(1)(c) or § 2511(1)(d), a defendant must know or have reason to know 'sufficient facts concerning the circumstances of the interception such that the defendant[] could, with presumed knowledge of the law, determine that the interception was prohibited in light of [the Wiretap Act].'"  McCann v. Iroquois Mem'l Hosp., 622 F.3d 745, 753 (7th Cir. 2010) (quoting Nix v. O'Malley, 160 F.3d 343, 349-50 (6th Cir. 1998)); accord Williams v. Poulos, 11 F.3d 271, 284 (1st Cir. 1993); Thompson v. Dulaney, 970 F.2d 744, 749 (10th Cir. 1992); see also Fernicola v. Specific Real Prop. in Possession, Custody, Control of Healthcare Underwriters Mut. Ins. Co., 2001 WL 1658257, at *7 (S.D.N.Y. Dec. 26, 2001) (Wiretap Act "only prohibits a person from using or disclosing communications where that person knows or has reason to know that the information was obtained in violation of the statute").

Zaratzian contends she has met this standard.  In support, she submits evidence of three incidents unrelated to the 2008 tax returns she alleges Carlin used and/or disclosed in violation of the Wiretap Act.  Specifically, Zaratzian argues: (i) Carlin communicated with Lendingtree Settlement Services about a refinancing relating to her purchase of Abadir's interest in their former shared residence, and Abadir intercepted several of Zaratzian's emails about that refinancing; (ii) a document Abadir sent Carlin referred to "last week's testament" (meaning Zaratzian's will) and Abadir would have no legitimate reason to know about or have access to

18

Zaratzian's will; and (iii) one of Zaratzian's attorneys stated Carlin told her that another of

Zaratzian's attorneys was "abusing amphetamines" (Doc. #121 ¶ 10), which was apparently the

subject of an email received by Zaratzian three years earlier.

Zaratzian urges these three incidents "viewed collectively," together with the email

Abadir sent Carlin attaching the tax returns, and Carlin's general involvement in—and resultant

familiarity with—the underlying divorce proceedings, lead to an "inference . . . that Carlin had

reason to know that the source of Abadir's information was an interception." (Doc. #130 at

3, 5).

The Court disagrees.

When the Court granted Zaratzian's motion for an indicative ruling on her claims against

Carlin, the Court concluded the newly-discovered May 18, 2010, email from Abadir to Carlin

attaching the tax returns as well as other documents—including a cover letter from Zaratzian's

accountant and a "privacy policy" document prepared by the accountant—made Zaratzian's

allegations against Carlin plausible. The Court stated, however, it was not making any finding

one way or the other as to whether Zaratzian would prevail on her claims against Carlin, and

deferred a decision on the merits until discovery had been completed and a summary judgment

motion had been filed.

To survive a motion for summary judgment, Zaratzian must present evidence on which a

jury could reasonably find for her. Dawson v. Cnty. of Westchester, 373 F.3d 265, 272 (2d Cir.

2004). Summary judgment may be granted for Carlin if the evidence is "merely colorable" or

not significantly probative. Anderson v. Liberty Lobby, Inc., 477 U.S. at 249-50.

The evidence Zaratzian submits, taken together, might demonstrate Carlin knew or had

reason to know Abadir was obtaining information from Zaratzian by improperly accessing her

19

computer or email account.  Importantly, however, it does not demonstrate Carlin knew enough about the circumstances of the auto-forwarding to allow him to determine Abadir was acquiring Zaratzian's email through that particular method—and without Zaratzian's actual or implied consent—thus providing Carlin enough information to conclude Abadir acquired the tax returns through an interception that violates the Wiretap Act.  (Carlin could have concluded, for example, that Abadir had improperly gained access to Zaratzian's computer files, or to her email password, neither of which would violate the Wiretap Act.)

At best, Zaratzian has submitted "merely colorable" evidence in support of her Wiretap Act claims against Carlin, which is not sufficient to defeat summary judgment.  Because Zaratzian has failed to make a sufficient showing as to Carlin's knowledge of the circumstances of the interception, summary judgment is appropriate on Zaratzian's claims against Carlin.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Carlin's motion for summary judgment on Zaratzian's Wiretap Act claims is therefore granted.

IV.     The Stored Communications Act

Under the SCA, "whoever (1) intentionally accesses without authorization a facility through which an electronic communication service is provided; or (2) intentionally exceeds an authorization to access that facility; and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system shall be punished."  18 U.S.C. § 2701(a).

Defendants argue Zaratzian's SCA claims should be dismissed because, among other reasons, Abadir never "accessed" Zaratzian's email account without authorization—he only logged into his own email account.

Zaratzian does not respond to defendants' summary judgment arguments on the merits of her SCA claims in her opposition brief. The Court therefore deems these claims abandoned. See Hyek v. Field Support Servs., Inc., 702 F. Supp. 2d 84, 102 (E.D.N.Y. 2010) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way." (internal quotation marks omitted)), aff'd, 461 F. App'x 59 (2d Cir. 2012); see also, e.g., McGuire v. Vill. of Tarrytown, 2011 WL 2623466, at *7 (S.D.N.Y. June 22, 2011); Oparaji v. Atl. Container Line, 2008 WL 4054412, at *12 (S.D.N.Y. Aug. 28, 2008), aff'd, 363 F. App'x 778 (2d Cir. 2010).

Zaratzian's SCA claims are therefore dismissed as against both Abadir and Carlin.[13]

V.    Constructive Fraud by Fiduciary

Abadir also moves for summary judgment on Zaratzian's claim for "constructive fraud by fiduciary," which Zaratzian asserts against Abadir only. The gravamen of this claim is that Abadir breached a fiduciary duty to Zaratzian by failing to inform her that he was secretly receiving copies of her email messages—including attorney–client communications—before and during the negotiation of their marital separation agreement ("MSA"). Zaratzian alleges this omission damaged her "in that the financial terms of the MSA unreasonably favored Abadir and exceeded that which similarly situated parties in an arms-length transaction would have agreed upon." (SAC ¶ 58).

---

[13]     Defendants also move for summary judgment on Count Six of the SAC, which is a claim for injunctive relief under Section 2707(b) of the SCA and Section 2520(b) of the Wiretap Act. Because the Court grants defendants' motion for summary judgment on Zaratzian's SCA claims, defendants' motion for summary judgment on Count Six is granted as to both defendants with respect to the SCA. Because the Court denies Abadir's motion for summary judgment—but grants Carlin's motion for summary judgment—on Zaratzian's Wiretap Act claims, defendants' motion for summary judgment on Count Six is, accordingly, denied as to Abadir and granted as to Carlin with respect to the Wiretap Act.

"The elements of common law fraud under New York law are: (1) a material representation or omission of fact; (2) made with knowledge of its falsity; (3) with scienter or an intent to defraud; (4) upon which the plaintiff reasonably relied; and (5) such reliance caused damage to the plaintiff." DeAngelis v. Corzine, 2014 WL 1695186, at *4 (S.D.N.Y. Apr. 16, 2014) (internal quotation marks omitted). "Constructive fraud requires establishing the same elements as actual fraud except that the element of scienter is replaced by a fiduciary or confidential relationship between the parties." Id. at *6 (internal quotation marks omitted).

Abadir argues Zaratzian has not met her burden to demonstrate that the omission in question—Abadir's failure to disclose the auto-forwarding of Zaratzian's email to his account— caused her damage by adversely affecting the terms of the divorce. The Court agrees.

"To establish causation, plaintiff must show both that defendant's misrepresentation induced plaintiff to engage in the transaction in question (transaction causation) and that the misrepresentations directly caused the loss about which plaintiff complains (loss causation)." Laub v. Faessel, 745 N.Y.S.2d 534, 536 (1st Dep't 2002). Abadir contends Zaratzian conceded in her deposition that her theory of damages is entirely speculative and was, moreover, unable to identify any intercepted emails that resulted in her receiving an unfair settlement—or even that discussed "the main terms of the divorce." (Doc. #135 at 16).

When Abadir was asked at his deposition if emails forwarded from Zaratzian's account to his account included electronic communications with third parties, including her attorneys, he conceded they did. (See Doc. #126-39 at 18). Nevertheless, even assuming arguendo Zaratzian demonstrated Abadir's failure to inform her about the auto-forwarding somehow induced her to enter into the MSA (transaction causation), Zaratzian still has not demonstrated loss causation. This is because Zaratzian has submitted no evidence showing how "the financial terms of the

MSA unreasonably favored Abadir" (SAC ¶ 58)—let alone what damages Zaratzian suffered as a result or how Abadir's failure to disclose his interception of Zaratzian's emails directly caused any such damages.

Because Zaratzian has therefore failed to make a sufficient showing on loss causation, summary judgment is appropriate on this claim.  See <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).

Abadir's motion for summary judgment on Zaratzian's constructive breach of fiduciary duty claim is granted, and Zaratzian's motion for summary judgment as to the existence of a fiduciary relationship between Abadir and Zaratzian is denied as moot.

**CONCLUSION**

Defendant Adel Ramsey Abadir's motion for summary judgment is GRANTED in part and DENIED in part.

Defendant Larry M. Carlin's motion for summary judgment is GRANTED.

Plaintiff's motion for partial summary judgment is GRANTED on the narrow issue of whether an interception occurred and is otherwise DENIED.

Plaintiff's claims under the Wiretap Act and for trespass to chattels and violation of New York Penal Law § 250.05 will proceed as against Abadir.

The Clerk is instructed to terminate the pending motions.  (Docs. ##110, 114, and 118).

The Clerk is further instructed to terminate defendant Larry M. Carlin.

By October 2, 2014, the parties are directed to submit a joint pretrial order in accordance with the Court's Individual Practices.

Counsel are directed to attend a status conference on October 16, 2014, at 9:30 a.m., at which time the Court will schedule a trial date.

Dated:  September 2, 2014
       White Plains, NY

SO ORDERED:

Vincent L. Briccetti
United States District Judge

24